[No. B230410. Second Dist., Div. Four. Mar. 27, 2012.]

AUDREY MEDRAZO et al., Plaintiffs and Appellants, v.
HONDA OF NORTH HOLLYWOOD, Defendant and Respondent.

2

**COUNSEL**

Steven A. Simons; Kemnitzer, Barron & Krieg, Eric M. Kapigian and William M. Krieg for Plaintiffs and Appellants.

Arent Fox, Richard D. Buckley, Jr., and Aaron H. Jacoby for Defendant and Respondent.

**4**

## OPINION

**WILLHITE, J.**—Plaintiff Audrey Medrazo, on behalf of herself and others similarly situated, filed a class action lawsuit against defendant Honda of North Hollywood[1] (HNH) asserting claims under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL) and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA), based upon HNH's alleged violations of Vehicle Code sections 11712.5 and 24014 (hereafter section 11712.5 and section 24014). This is the second appeal in this case. In the first appeal, we reversed the trial court's denial of class certification and directed that the class be certified. (*Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89 [82 Cal.Rptr.3d 1] (*Medrazo I*).) In this appeal, Medrazo challenges the trial court's granting of HNH's motion for judgment, which was filed after Medrazo completed her presentation of evidence at trial. The trial court found that Medrazo failed to establish that she, or any other class member, was injured by HNH's conduct, and therefore HNH was entitled to judgment on the UCL and CLRA claims. We reverse the judgment as to the UCL claim, but we affirm the judgment as to the CLRA claim on the ground that Medrazo forfeited any issue regarding that claim by failing to adequately address it in her briefs on appeal.

### BACKGROUND

As noted, Medrazo's UCL and CLRA claims are based upon her allegation that HNH sold new motorcycles without complying with section 11712.5 and section 24014. Section 11712.5 provides in relevant part: "It is unlawful and a violation of this code for a dealer issued a license pursuant to this article to sell, offer for sale, or display any new vehicle, as follows: [¶] (a) A new motorcycle unless there is securely attached thereto a statement as required by Section 24014." Section 24014 provides: "(a) No dealer shall sell, offer for sale, or display, any new, assembled motorcycle on its premises, unless there is securely attached to its handlebar a label, approved by the Department of Motor Vehicles, furnished by the manufacturer, on which the manufacturer shall clearly indicate the following: [¶] (1) The recommended retail price of the motorcycle. [¶] (2) The recommended price for each accessory or item of optional equipment physically attached to the motorcycle at the time of its delivery to the dealer. [¶] (b) The dealer shall clearly indicate on the label, furnished by the manufacturer, the following: [¶] (1) The amount charged, if any, over and above the suggested retail price for transportation to the dealership. [¶] (2) The amount charged, if any, for the assembly, preparation, or both, of the motorcycle. [¶] (3) The amount

---

[1] Although the complaint named two defendants—Honda of North Hollywood and Bill Robertson & Sons, Inc.—the answer to the complaint was filed by "Bill Robertson & Sons, Inc. dba Honda of North Hollywood." Therefore, we refer to a single defendant, HNH.

charged, if any, for each dealer added accessory or item of optional equipment. [¶] (4) The total recommended retail price of the vehicle which shall be the aggregate value of paragraphs (1) and (2) of subdivision (a) and paragraphs (1), (2) and (3) of subdivision (b)."

As explained in our prior opinion, in moving for class certification, Medrazo presented evidence that (1) when she bought a Honda motorcycle from HNH, there was no label (also known as a hanger tag or hang tag) attached to it; (2) more than $2,000 in dealer charges was added to the cost of the motorcycle she purchased; (3) HNH did not attach hanger tags to any Suzuki or Yamaha motorcycles it offered for sale (because those manufacturers did not provide hanger tags); (4) although Honda provided hanger tags for all of its motorcycles, HNH did not attach the tags to all of the Honda motorcycles, and did not include the dealer charges on all of the hanger tags that were attached; and (5) in the four years prior to June 30, 2006 (when Medrazo filed her complaint), HNH sold more than 3,000 motorcycles. (*Medrazo I, supra,* 166 Cal.App.4th at p. 94.) Medrazo sought to certify the class, which was defined as follows: " 'All purchasers of new motorcycles who were charged for "destination", "assembly" or other DEALER added "accessories" that were not disclosed on a hanger tag since August 1, 2002, being four years prior to the filing of this lawsuit.' " (*Ibid.*) The trial court denied class certification, finding (among other things) that common issues did not predominate. (*Id.* at p. 99.) We reversed the court's denial of certification because even though there are individual issues that must be resolved—for example, each Honda purchaser must establish there was no hanger tag attached to the motorcycle he or she purchased and/or the dealer-added costs were not disclosed on the hanger tag, and a determination must be made of the amount of restitution (if any) owed to each class member—those issues can be effectively managed[2] and pale in comparison to the substance and scope of the issues common to the class.[3] (166 Cal.App.4th at p. 100.) We directed the trial court, on remand, to certify the class. (*Id.* at p. 102.)

---

[2] For example, the size of the subclass of Honda purchasers and/or the need for individual questioning of class members might be limited by sending a questionnaire to all Honda purchasers (if the issues common to the class are resolved in Medrazo's favor) asking each to indicate, under penalty of perjury, whether there was a hanger tag attached to the motorcycle they purchased and, if so, whether the tag included dealer-added charges.

[3] As we stated in our prior opinion, the issues common to the class "include (1) whether HNH violated section 11712.5 and section 24014 by selling motorcycles without hanger tags; (2) whether a purchaser who buys a motorcycle sold in violation of section 11712.5 and section 24014 is entitled to restitution, disgorgement, and/or damages, and if so, what is the proper measure of restitution, disgorgement, and/or damages; (3) whether the alleged injury to the purchaser is mitigated by the disclosure of dealer-added costs in a sales agreement; and (4) whether HNH is excused from the requirements of section 11712.5 and section 24014 if the manufacturer does not supply a hanger tag that complies with section 24014." (*Medrazo I, supra,* 166 Cal.App.4th at p. 100.)

Following remand, the case was tried before the court in a bench trial.[4] Before trial, Medrazo filed a trial brief in which she explained the basis for her claims and addressed HNH's anticipated defenses.

In her trial brief, Medrazo explained that her UCL claim was based on three of the four prongs of the UCL. She asserted that HNH's sale of motorcycles without hanger tags that disclosed the dealer-added charges for freight and destination was (1) an unlawful business practice; (2) a fraudulent business practice; and (3) unfair, deceptive, untrue, or misleading advertising. Regarding her CLRA claim, she explained that HNH's alleged conduct fell within the definition of five of the practices proscribed by the CLRA: (1) "Representing that goods or services have . . . approval, characteristics [or] benefits . . . which they do not have" (Civ. Code, § 1770, subd. (a)(5)); (2) "Advertising goods or services with intent not to sell them as advertised" (Civ. Code, § 1770, subd. (a)(9)); (3) "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (Civ. Code, § 1770, subd. (a)(13)); (4) "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (Civ. Code, § 1770, subd. (a)(14)); and (5) "Inserting an unconscionable provision in the contract" (Civ. Code, § 1770, subd. (a)(19)).

Addressing HNH's anticipated defenses, Medrazo argued that (1) HNH's assertion that it did not have to attach any hanger tags on Suzuki or Yamaha motorcycles because those manufacturers did not provide tags was contrary to the history of section 24014; (2) HNH's ultimate disclosure of the dealer-added charges once the customer sat down to negotiate the final purchase terms is not a defense to Medrazo's claims because section 11712.5 and section 24014 are designed to prevent dealers from enticing customers to commence negotiations by quoting a lower price than it intends to charge; and (3) proof of individual reliance by class members on HNH's deceptive practice is not required to impose restitution liability against HNH under the UCL.

Medrazo presented two witnesses at trial: herself and David Denman, HNH's sales manager (examined under Evid. Code, § 776).

Medrazo testified that she went to HNH in September 2005 with her boyfriend to purchase a motorcycle for him. She did not see any hanger tags on any of the motorcycles, although there were some price stickers on the

---

[4] Although Medrazo originally sought damages under the CLRA and demanded a jury trial, she subsequently abandoned her claim for damages, arguing that she sought only restitution. Based upon Medrazo's abandonment of her damages claim, HNH asked the trial court to order a bench trial. Medrazo then expressly waived her right to a jury trial.

windshields of some of them. There was no hanger tag or price sticker on the motorcycle she and her boyfriend were interested in.[5] They discussed the price of the motorcycle with a salesman, but he did not disclose the destination charges or the total price until she was presented with the sales contract. She signed a contract to purchase the motorcycle, which stated, among other charges, the cash price of the motorcycle ($8,700), the cash price for accessories/destination ($2,284), and the total price for the vehicle and accessories ($10,984). She agreed to pay the total price (which included other fees and taxes) over 84 months. She and her boyfriend had agreed that she would make the payments for the first two months, and he would pay the remainder. Medrazo made the payments for the first two months as agreed, and owes more than $12,000 under the purchase agreement.[6]

Denman testified that he is the sales manager for HNH, a position he has held for 18 to 20 years. Since 2002, HNH has sold three lines of motorcycles: Honda, Yamaha, and Suzuki. From approximately 2002 until sometime after the instant lawsuit was filed, the only time HNH put any kind of pricetag on a Suzuki or Yamaha motorcycle was when the motorcycle was on a specific sale (i.e., selling for less than the manufacturer's suggested retail price, or MSRP). Neither Suzuki nor Yamaha provided hanger tags for its motorcycles, but Honda did provide them for its motorcycles. When new Hondas were delivered, HNH lot porters were supposed to attach the hanger tags to the motorcycles, and a salesman was supposed to write the dealer-added charges on the tags, but there was no specific procedure to ensure that those things got done, and sometimes they did not get done. Denman explained that if he was caught up on all of his work and there was a lot porter standing around doing nothing, he would instruct the lot porter to attach hanger tags to Honda motorcycles that were missing tags. Even when hanger tags were attached to the Hondas, however, they did not seem to last more than a few days before they were destroyed, pulled off, or blown off.

Denman testified that a customer who was looking at motorcycles on the lot could ask a salesperson for the price of a motorcycle he or she was interested in if it did not have a hanger tag. The salespeople were instructed to tell the customer only the MSRP. If the customer wanted to purchase the motorcycle, the salesperson would take him or her inside to negotiate the terms of sale. At that time, the salesperson would complete a worksheet that disclosed any dealer-added charges (which were different for each kind of motorcycle; HNH had a list of the standardized charges for each kind). Once

---

[5] Medrazo admitted, however, that she did not know what a hanger tag was at the time of the purchase.

[6] Although it is not relevant to the issues on appeal, Medrazo testified that she and her boyfriend broke up shortly after she bought the motorcycle. He kept the motorcycle (until Medrazo and her parents repossessed it), but did not make any payments on it.

the negotiations over the sales price were completed, the customer would be taken to a financial office to have the final contract prepared.

In the course of his testimony, Denman identified the hanger tag for the motorcycle Medrazo bought, which HNH located in response to a discovery request.[7] He conceded that, since HNH still possessed the hanger tag, it probably had not been attached to the motorcycle when Medrazo bought it. The hanger tag showed the MSRP for the vehicle, but it did not show any dealer-added charges.

Denman also testified that after this lawsuit was filed, HNH changed its practice with regard to hanger tags. First, it created its own hanger tags for Suzukis and Yamahas based upon the Honda-supplied tags. Next, it laminated the hanger tags in plastic to keep them from being destroyed or blown off. Finally, it pays a specific salesperson additional money to walk the floor every day to look for and replace missing hanger tags.

After Denman finished his testimony as part of Medrazo's case-in-chief, Medrazo rested, subject to a proposed stipulation regarding the identities and files of the 4,100 class members[8] and the admission of exhibits referred to at trial. Before beginning its case-in-chief, HNH moved for judgment under Code of Civil Procedure section 631.8. HNH argued it was entitled to judgment on the UCL claim because Medrazo failed to show she suffered injury in fact as a result of HNH's alleged violation of section 11712.5 and

---

[7] HNH's counsel asserted at oral argument that there was no evidence that the hanger tag identified as an exhibit at trial was the tag for the motorcycle Medrazo bought. He is incorrect. When Denman was first shown the exhibit at trial, he stated that he did not know whether it was that specific tag, but after he compared the vehicle identification number on the tag with the vehicle identification number on the purchase contract, he confirmed that it was the hanger tag for that motorcycle. In its petition for rehearing after we filed our opinion, HNH argues that we should not have considered the contents of the hanger tag because the exhibit was never admitted into evidence. While HNH is technically correct that the exhibit was not admitted, its argument is disingenuous. When Medrazo rested her case, she did so *subject to admission of the exhibits referred to at trial*. HNH immediately moved for judgment, before addressing the admissibility of any exhibits. HNH has not asserted that the exhibit was not admissible, and we see no grounds for objection. Indeed, as noted, it was the subject of testimony at trial.

[8] Apparently there was a dispute about the files—which contain the worksheets and purchase contracts—for each of the class members. Although the record does not contain any documents or orders related to that dispute other than HNH's objections to Medrazo's notice to produce them at trial, it appears that HNH refused to produce them to Medrazo or at trial due to privacy concerns for its customers. Counsel for Medrazo proposed that the parties stipulate that the class members would be identified by name, along with the amount of restitution to which each class member would be entitled, which would be the amount of dealer-added freight and preparation charges. Although counsel for HNH did not object to producing a list of the names of class members, he was not willing to produce the files or stipulate that they be admitted into evidence, asserting that HNH does not concede that any of the class members has an actual claim.

section 24014, and therefore lacked standing to sue under Business and Professions Code section 17204, because she was informed of the dealer-added charges before she entered into the purchase contract. It also argued it was entitled to judgment on the CLRA claim because she failed to establish actual injury as to herself or any class member, and because she failed to present evidence to show that HNH engaged in any of the practices prohibited by Civil Code section 1770. Finally, HNH argued that Medrazo failed to establish the amount of restitution allegedly owed to herself or any other class member.

The trial court granted HNH's motion. In its statement of decision, the court found that (1) Medrazo was informed of all the dealer-added charges and was given an ample opportunity to read the purchase contract and ask questions before she signed the contract; (2) she failed to produce any evidence that she was misled by, or suffered any injury in fact as a result of, HNH's alleged failure to comply with section 24014, and therefore she lacked standing to recover any relief under the UCL or the CLRA; (3) she failed to present any evidence that any class member was injured as a result of HNH's alleged failure to comply with section 24014; (4) her testimony that there was no hanger tag attached to the motorcycle she purchased was not credible; (5) she failed to show the amounts of dealer-added charges that were charged to any other HNH customer; and (6) she failed to establish any basis on which to impose any injunctive relief against HNH. The court entered judgment in favor of HNH, from which Medrazo appeals.[9]

## DISCUSSION

Medrazo contends (1) the trial court's finding that she lacked standing was improper because the standing requirement under the UCL applies only to class certification and the finding is unsupported by the evidence; (2) the trial court erred in concluding that Medrazo and the class members must show actual reliance on the nondisclosure of dealer-added charges in order to establish injury in fact under the UCL; and (3) the trial court's finding that there was insufficient evidence to establish the amount of restitution allegedly owed to each class member was premature. We conclude that the trial court was required to determine whether Medrazo has standing under the UCL, but its finding that she did not suffer injury in fact was based upon an incorrect application of the law and was contrary to the evidence presented at trial; Medrazo was not required to show actual reliance on HNH's alleged nondisclosure—by herself or by the class members—to be entitled to restitution under the "unlawful" prong of the UCL, and she presented sufficient evidence

---

[9] The court subsequently amended the judgment fixing the amount of costs awarded to HNH.

to establish economic injury under the UCL. We also conclude that the trial court's finding that Medrazo failed to establish the amount of restitution allegedly owed to each class member was premature in light of HNH's failure to produce the customer files or information necessary for Medrazo to establish those amounts. Finally, we conclude that Medrazo has forfeited any issue regarding her CLRA claim by failing to specifically address that claim in her opening brief.

## A. *Standard of Review*

In a nonjury trial, "[a] party may move for judgment in its favor under [Code of Civil Procedure section 631.8] after the opposing party has completed presentation of its evidence. [Citation.] The judge, sitting as trier of fact, may weigh the evidence and order judgment in favor of the moving party. [Citation.] ' " 'The purpose of Code of Civil Procedure section 631.8 is . . . to dispense with the need for the defendant to produce evidence . . .' " ' where the court is persuaded that the plaintiff has failed to sustain its burden of proof. [Citation.] Because the trial court evaluates the evidence as a trier of fact, it may refuse to believe some witnesses while crediting the testimony of others. [Citation.]" (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1262–1263 [72 Cal.Rptr.3d 171], fn. omitted.)

"The standard of review after a trial court issues judgment pursuant to Code of Civil Procedure section 631.8 is the same as if the court had rendered judgment after a completed trial—that is, in reviewing the questions of fact decided by the trial court, the substantial evidence rule applies. An appellate court must view the evidence most favorably to the respondents and uphold the judgment if there is any substantial evidence to support it. [Citations.] However where, as here, we are called upon to review a conclusion of law based on undisputed facts, we are not bound by the trial court's decision and are free to draw our own conclusions of law. [Citation.]" (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424–425 [57 Cal.Rptr.2d 46].)

In this case, the issues Medrazo raises on appeal challenge the trial court's application of law to undisputed facts. Therefore, our review is de novo.

## B. *Medrazo Was Required to Establish Her Standing Under the UCL*

Before November 2004, ". . . California courts consistently held that liability for restitution under the UCL could be imposed against a defendant without any individualized proof of causation or injury; the plaintiff needed only to show that the defendant engaged in a practice that was unlawful, unfair, or fraudulent and that the defendant may have acquired money or property by means of that practice." (*Steroid Hormone Product Cases* (2010)

181 Cal.App.4th 145, 154 [104 Cal.Rptr.3d 329] (*Steroid Cases*).) In the November 2004 General Election, the voters approved Proposition 64, which amended the UCL to impose a standing requirement for private actions for relief. Under the amended UCL, "a private action for relief may be maintained only if the person bringing the action 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' " (*Steroid Cases*, at p. 154, quoting Bus. & Prof. Code, § 17204.) When the private action is brought as a class action, only the named plaintiff is required to meet this standing requirement. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*); *Steroid Cases, supra*, 181 Cal.App.4th at p. 154.)

■ Medrazo argues that she was not required to establish at trial her standing to bring a representative action under the UCL because the standing requirement applies only at the time of class certification and she was found to have standing at that time. She is incorrect. Even if she had been found to have standing at the time of class certification (although we note that our prior opinion did not address standing under the UCL), HNH may nonetheless challenge her standing at the time of the trial, since "standing must exist at all times until judgment is entered and not just on the date the complaint is filed. '[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding.' [Citations.]" (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 233 [46 Cal.Rptr.3d 57, 138 P.3d 207]; accord, *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345 [90 Cal.Rptr.3d 589].)

C. *Medrazo Is Not Required to Show Actual Reliance to Establish Standing Under the UCL*

Even though we reject Medrazo's assertion that she was not required to establish standing at the time of trial, we agree that the trial court's finding that she failed to establish any injury and therefore lacked standing was based upon an incorrect application of the law. The court found, in effect, that Medrazo failed to establish that she (or any other class member) was injured because all of the dealer-added charges were disclosed in the sales contract, and therefore there was no evidence that Medrazo or other class members actually relied upon or were misled by the nondisclosure of those charges on a hanger tag attached to the motorcycle. The court's analysis fails to take into account the different prongs of the UCL.

■ The UCL outlaws as unfair competition "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to

be considered unfair competition. [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471 [49 Cal.Rptr.3d 227].)

In this case, Medrazo argued in her trial brief, and argues on appeal, that HNH's conduct—offering for sale and selling motorcycles that do not have hanger tags attached that disclose the dealer-added charges—constitutes an unlawful business practice, a fraudulent business practice, and unfair, deceptive, untrue, or misleading advertising. However, the trial court's analysis—like HNH's argument in its trial brief, motion for judgment, and respondent's brief on appeal—which requires a showing of actual reliance, addresses only the fraudulent prong of the UCL.

■ As the Supreme Court explained in *Tobacco II*, the language in the UCL limiting standing to plaintiffs who lost money "as a result of the unfair competition" (Bus. & Prof. Code, § 17204) imposes an actual reliance requirement on the named plaintiff (and only the named plaintiff) in a UCL action based upon the fraudulent prong or false advertising because "reliance is the causal mechanism of fraud." (*Tobacco II, supra*, 46 Cal.4th at p. 326; see also *id.* at p. 320 [the standing requirement to show causation does not apply to absent class members].) But the Supreme Court also explained that an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory. (46 Cal.4th at p. 325, fn. 17.) In those actions, the plaintiff must simply show that the alleged violation caused or resulted in the loss of money or property. Because, as discussed below, we find that Medrazo presented sufficient evidence to establish standing under the unlawful prong of the UCL, we need not address whether the fact that HNH disclosed all of the dealer-added charges precludes her from establishing actual reliance under the fraud or false advertising prong of the UCL.

D. *Medrazo Presented Sufficient Evidence to Establish Standing Under the "Unlawful" Prong of the UCL*

As noted, the amended UCL requires a plaintiff to establish that he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) Thus, the plaintiff must establish both injury in fact and "some form of economic injury" that has a causal connection to the unfair competition. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 326 [120 Cal.Rptr.3d 741, 246 P.3d 877] (*Kwikset*).)

■ Our Supreme Court has explained that "injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " [citation].' [Citations.] 'Particularized' in this context means simply that 'the

injury must affect the plaintiff in a personal and individual way.' [Citation.]" (*Kwikset, supra*, 51 Cal.4th at pp. 322–323.) The court emphasized that "injury in fact is not a substantial or insurmountable hurdle . . . . [Citation.] Rather, it suffices . . . to " 'allege[] some specific, 'identifiable trifle' of injury.' " [Citations.]" (*Id.* at pp. 324–325.)

In the present case, Medrazo presented evidence of injury in fact. She presented evidence that there was no hanger tag showing the dealer-added charges attached to the motorcycle that she and her boyfriend were interested in purchasing,[10] and that she was not informed of the dealer-added charges or the total price of the motorcycle until she was presented with the sales contract. This evidence is sufficient to establish that she suffered a concrete, particularized, and actual invasion of an interest legally protected by section 11712.5 and section 24014, i.e., the disclosure—*before a decision to purchase a specific motorcycle is made*—of the MSRP and any dealer-added charges for all new motorcycles offered for sale. (See Cal. Dept. of Consumer Affairs, Rep. on Assem. Bill No. 3645 (1973–1974 Reg. Sess.) Sept. 6, 1974 [purpose of bill enacting § 24014 and amending § 11712.5 is to bring laws regulating the sale of a motorcycle in line with federal laws mandating disclosure of MSRP in car sales, and "is designed to provide . . . motorcycle buyers with information that is necessary to make a wise purchase"].)

Medrazo also presented evidence of an economic injury caused by the alleged unfair competition. She testified that she made the first two months' payments, and owes more than $12,000 on a motorcycle that HNH allegedly was not legally allowed to sell (or at least was not allowed to sell at the price for which it was sold) because it failed to disclose the dealer-added charges on a hanger tag attached to the motorcycle.

In short, the undisputed evidence before the trial court was sufficient to establish that Medrazo "has suffered injury in fact and has lost money . . . as a result of the [alleged] unfair competition." (Bus. & Prof. Code, § 17204.) Thus, Medrazo has standing to bring a lawsuit on her own behalf and as a representative action. (*Tobacco II, supra*, 46 Cal.4th at p. 306; *Steroid Cases, supra*, 181 Cal.App.4th. at p. 154.) If, on retrial, the court determines that

---

[10] Although we must defer to the trial court's finding that Medrazo's testimony that there was no hanger tag was not credible, Denman testified that the hanger tag probably was not attached, since it was still in HNH's possession at the time of the lawsuit. In any event, even if the hanger tag had been attached, it showed only the MSRP, and did not show any dealer-added charges or the total price of the motorcycle.

HNH's sale of motorcycles without hanger tags (or without tags that disclosed dealer-added charges) violated the UCL,[11] class members will be entitled to restitution of any money "which may have been acquired [by HNH] by means of such unfair competition" (Bus. & Prof. Code, § 17203)— i.e., the dealer-added charges that were not disclosed on hanger tags.

### E. *Medrazo Presented Sufficient Evidence of Restitution Amounts at This Stage of Trial*

As noted, Medrazo rested her case subject to working out a stipulation with HNH regarding the identities of class members and information from each member's files regarding dealer-added charges. Medrazo sought the stipulation because HNH objected on privacy grounds to the production of class members' files, or the information contained therein (including the identity of the class members), and refused to produce them. Before the stipulation could be worked out, however, HNH moved for judgment and argued that one ground for granting judgment in its favor was Medrazo's failure to show the amount of dealer-added charges imposed on each class member. In granting HNH's motion, the trial court found that Medrazo failed to show the amount of dealer-added charges that was charged to each class member.

While it is true that Medrazo was unable to show each class member's dealer-added charges at the time the motion for judgment was brought— because HNH refused to disclose any information from class members' files—Medrazo did show the amounts HNH charged for each type of motorcycle it sold. Thus, Medrazo could easily establish the amounts that would be owed as restitution (if, after HNH presents its defense, the court determines there was a violation of the UCL) once HNH discloses the necessary information from the class members' files, i.e., either the type of motorcycle each class member bought and/or the dealer-added charges for each sale found to have violated the UCL. Therefore, the trial court's finding that Medrazo failed to show the amounts of restitution owed to class members was premature.

### F. *Medrazo Has Forfeited Any Issues Regarding Her CLRA Claim*

Although Medrazo makes reference in her appellant's opening brief to her CLRA claim, she includes no separate analysis regarding that claim, focusing almost exclusively on her UCL claim. Indeed, at no point does she attempt to explain which of the practices proscribed under the CLRA (Civ. Code, § 1770) apply to HNH's conduct, or how they apply. Moreover, in the

---

[11] We can make no finding on this issue—particularly with regard to Suzuki and Yamaha motorcycles, for which the manufacturers did not supply hanger tags—because HNH has not had an opportunity to present its defense.

conclusion of her opening brief, Medrazo asks that the judgment be reversed and that judgment be entered in her favor and in favor of the class "on issues of liability under the UCL, with directions to the trial court to determine the specific amounts of restitution to be awarded to the class," or that the case be remanded for a new trial. Because Medrazo fails to provide any meaningful analysis of her CLRA claim, we deem any asserted error regarding the judgment on that claim to be forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

## DISPOSITION

The judgment on the UCL claim is reversed, and the matter is remanded for further proceedings on this claim. The judgment on the CLRA claim is affirmed. Medrazo shall recover her costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied April 16, 2012, and the opinion was modified to read as printed above.