Filed 1/27/16  Certified for Publication 2/22/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELIZA GILKYSON et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>DISNEY ENTERPRISES, INC. et al.,<br><br>　　Defendants and Respondents. | B260103<br><br>(Los Angeles County<br>Super. Ct. No. EC061586) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Reversed and remanded with directions.

Hunter, Molloy & Salcido, John Logan Hunter; Law Office of Craig Barker and Craig Barker for Plaintiffs and Appellants Eliza Gilkyson, Tony Gilkyson and Nancy Gilkyson.

Horvitz & Levy, Frederic D. Cohen and Mark A. Kressel for Defendants and Respondents Disney Enterprises, Inc. and Wonderland Music Company, Inc.

_____

Eliza Gilkyson, Tony Gilkyson and Nancy Gilkyson, the adult children and heirs of songwriter Terry Gilkyson, sued Disney Enterprises, Inc. and its music publishing subsidiary Wonderland Music Company, Inc. (collectively Disney) alleging Disney had breached its contractual obligation to pay royalties in connection with the licensing or other disposition of the mechanical reproduction rights to Gilkyson's songs. The trial court dismissed the lawsuit after sustaining Disney's demurrer to the first amended complaint without leave to amend, ruling the Gilkyson heirs' causes of action were barred by the applicable statutes of limitations. Because the trial court erred in failing to apply the doctrine of continuous accrual, under which a portion of the Gilkyson heirs' contract claim is timely, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Single-Song Contracts*

Terry Gilkyson, a successful songwriter in the 1950's and 1960's and a member of the band The Easy Riders, wrote "The Bare Necessities" and several other songs for the popular animated film *The Jungle Book*, which was first released in 1967.[1] Several years prior to the film's release, Gilkyson signed single-song contracts with Disney's predecessor-in-interest, Walt Disney Productions, that deemed it the author of the songs and the owner of the copyright and obligated it to pay Gilkyson an initial fee of $1,000 for each song he wrote for the film, as well as specified royalties for sales of sheet music and for licensing or other disposition of the mechanical reproduction rights. The contract expressly excluded from that royalty obligation Disney's use of the songs in "motion

---

[1] Although Gilkyson wrote several songs for the film, only "The Bare Necessities" was used. Fans of that song will recognize its oft quoted lyrics: "Look for the bare necessities/ The simple bare necessities/ Forget about your worries and your strife/ I mean the bare necessities/ Old mother nature's recipes/ That bring the bare necessities of life." In 1968 Gilkyson received an Academy Award nomination for Best Original Song and a Grammy Award nomination, along with Richard M. Sherman and Robert B. Sherman, for Best Recording for Children. ("Talk to the Animals" won the Oscar; "Dr. Seuss: How the Grinch Stole Christmas," the Grammy Award.)

2

pictures, photoplays, books, merchandising, television, radio and endeavors of the same or similar nature."

Pursuant to those contracts Disney paid Gilkyson over the years and, after his death in 1999, his heirs royalties for sheet music and for audio reproductions of Gilkyson's songs (vinyl records, compact discs (CDs) and digital downloads). However, Disney did not pay, and has never paid, Gilkyson or his heirs royalties for the use of his songs in any audiovisual medium, including digital video disc recordings (DVDs).

2. *This Lawsuit*

On November 15, 2013 the Gilkyson heirs sued Disney for breach of contract and several related claims alleging Disney had breached its contractual obligation to pay the Gilkyson heirs royalties in connection with the use of Gilkyson's songs on videocassette recordings (VHS tapes) and DVDs. In their original complaint the Gilkyson heirs alleged the DVD version of *The Jungle Book* released by Disney in 2007 included "The Bare Necessities" and additional songs that Gilkyson had written for the film but that had never before been released. Although Disney sold approximately four million DVDs containing Gilkyson's songs and received substantial profits, the complaint alleged it had failed to pay the Gilkyson heirs any per-unit royalty in connection with those sales. The Gilkyson heirs also alleged Disney failed to pay any royalties in connection with VHS tapes containing "The Bare Necessities," which were released some time prior to 2007.

Disney demurred to the complaint. While insisting its contractual obligation to pay mechanical reproduction royalties excluded use of Gilkyson's songs in any audiovisual medium, for purposes of its demurrer it confined its arguments to claiming each cause of action was time-barred under the applicable statutes of limitations. In particular, emphasizing the allegation the DVDs had been released in 2007, Disney argued the Gilkyson heirs' claim for breach of written contract accrued no later than 2007, thus making the claim, filed in November 2013, untimely under the governing four-year statute of limitations. In addition, the release of VHS tapes had occurred decades prior to 2007. Accordingly, Disney argued any claim for failure to pay royalties accrued at the first breach of contract in the 1990's, leaving all claims time-barred.

3

The Gilkyson heirs opposed the demurrer, arguing their claims were timely in their entirety under the continuing violation doctrine or, at a minimum, timely as to the claims for royalties due within the four years prior to their filing of the lawsuit in November 2013 pursuant to the continuous accrual doctrine explained in *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185 (*Aryeh*).

The trial court sustained Disney's demurrer, observing the claim for royalties began to accrue in 1991 when the VHS tapes of *The Jungle Book* were originally released and, at the latest, by December 31, 2007 when, by the Gilkyson heirs' own admission, the DVDs were released. Under either scenario, the court ruled, the Gilkyson heirs' claims were barred by the four-year statute of limitations for written contracts. The court granted the Gilkyson heirs leave to amend.

On April 30, 2014 the Gilkyson heirs filed a first amended complaint asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief. The amended complaint contained substantially similar allegations as the original complaint with a few exceptions. The amended complaint added the allegation that Disney had released *The Jungle Book 2* in 2008 and re-released *The Jungle Book* on Blu-ray format, digital download format and DVD in 2014. Although each of these products included Gilkyson songs, Disney failed to pay, and did not intend to pay in the future, the Gilkyson heirs any royalties in connection with its sales of those products. The amended complaint, in contrast to the original, omitted any reference to the 1991 release of *The Jungle Book* in VHS format.

The trial court sustained Disney's demurrer to the first amended complaint, this time without leave to amend, ruling the omission of allegations relating to the release of the film in VHS format was a sham pleading intended to avoid the limitations bar. In any event, the Gilkyson heirs' claims asserted in the first amended complaint accrued no later than 2007 with the first release of DVDs; and thus their claim for royalties, filed well after the expiration of the four-year statute of limitations applicable to written contracts, was time-barred. The court rejected the Gilkyson heirs' contention the continuous

4

accrual doctrine rendered their claims timely for breaches within the four years preceding the filing of their complaint.

## DISCUSSION

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452[2]; *Schifando*, at p. 1081.) The application of a statute of limitations based on facts alleged in the complaint is a legal question subject to de novo review. (*Aryeh, supra,* 55 Cal.4th at p. 1191.)

### 2. *The Court Erred in Sustaining the Demurrer to the First Amended Complaint*

#### a. *The statute-of-limitations bar and the continuous accrual doctrine*

The statute of limitations, a legislatively prescribed time period to bring a cause of action, "exists to promote the diligent assertion of [the] claim[], ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed." (*Aryeh, supra,* 55 Cal.4th at p. 1191; accord, *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246.) For breach of a written contract, that period is four years from the time the claim accrues. (§ 337.) Traditionally, a claim accrues "'"when [it] is complete with all of its elements"—those elements being wrongdoing [or breach], harm, and causation.'" (*Aryeh,* at p. 1191; accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 (*Howard Jarvis*)

---

[2]     Statutory references are to this code unless otherwise indicated.

5

[statute of limitations runs from occurrence of the last element essential to the cause of action].)  However, there are several recognized exceptions to this legislative time-bar, among them, the continuous accrual doctrine.

Under the continuous accrual doctrine each breach of a recurring obligation is independently actionable.  (*Aryeh, supra,* 55 Cal.4th at p. 1199 ["'[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period'"]; see *ibid.* ["[b]ecause each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citations]—each may be treated as an independently actionable wrong with its own time limit for recovery"]; *Howard Jarvis, supra,* 25 Cal.4th at p. 809 [same]; *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388 (*Armstrong*) [continuous accrual applies to contract where performance is severed into intervals, such as installment contracts, leases with periodic rental payments and periodic pension payments]; *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439, fn. 7 ["a new breach occurs each month the bank persists in its refusal to pay [monthly] rent at the gold clause rate"].)  The effect of the doctrine is that "a suit for relief may be partially time-barred as to older events but timely as to those [acts of wrongdoing occurring] within the applicable limitations period." (*Aryeh,* at p. 1192; accord, *Howard Jarvis,* at p. 809.)[3]  In this way, the doctrine represents an

---

3     The continuous accrual doctrine is thus different from the continuing violation doctrine.  Under the continuing violation doctrine, "a pattern of reasonably frequent and similar acts may . . . justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside the limitations period." (*Aryeh, supra,* 55 Cal.4th at p. 1198; accord, *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 811-812; see *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1058 [applying doctrine to employer's retaliatory "course of conduct"].)

The continuous accrual doctrine, in contrast, recognizes each breach as separately actionable, making timely only those claims for wrongdoing occurring during the limitations period.  (See *Aryeh, supra,* 55 Cal.4th at p. 1199 ["unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches

6

equitable "response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach of misconduct; [absent the doctrine,] parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated." (*Aryeh*, at p. 1198.)

### b. *The continuous accrual doctrine applies to the Gilkyson heirs' contract claims*

The Supreme Court most recently explained the proper use of the continuous accrual doctrine in *Aryeh, supra,* 55 Cal.4th 1185. There, plaintiff had leased copy machines from Canon Business Solutions pursuant to a five-year lease entered in 2001. Under the terms of the lease plaintiff was to pay a fixed monthly rent for each copier, subject to a maximum copy allowance. Copies in excess of the monthly allowance required payment of an additional per copy charge. After entering the lease, plaintiff noticed discrepancies between the number of copies it had made and the meter readings taken by Canon. Ultimately plaintiff concluded Canon had counted against plaintiff's copy allowance copies made during Canon's periodic service visits, causing plaintiff to exceed the allowance and incur additional charges. In January 2008 plaintiff sued Canon alleging a single claim for an unlawful or unfair business practice in violation of the Unfair Competition Law (UCL) (Bus & Prof. Code, § 17200 et seq.) Canon demurred, arguing the claim had accrued in 2002 at the first violation of the UCL as alleged in the complaint, making the complaint, filed six years later, time-barred. The trial court agreed and sustained the demurer without leave to amend. (*Aryeh,* at pp. 1188-1189.)

---

falling within the limitations period"]; *Howard Jarvis, supra,* 25 Cal.4th at pp. 818-822 [same].)

The Gilkyson heirs have abandoned their initial argument that their contract claim is actionable in its entirety under the continuing violation doctrine. They now invoke exclusively the continuous accrual doctrine to argue a portion of their claim is timely.

The Supreme Court rejected Canon's argument the UCL claim was time-barred, explaining Canon's obligation to charge properly for its goods and services under the lease agreement was a recurring one: "[Plaintiff] has alleged a recurring unfair act—the inclusion in monthly bills of charges for copies Canon itself made. The theory of continuous accrual applies to such allegations, and insofar as the operative complaint alleges at least some such acts within the four years preceding suit, the suit is not entirely time-barred." (*Aryeh, supra,* 55 Cal.4th at p. 1202; accord, *Howard Jarvis, supra,* 25 Cal.4th at p. 821 [plaintiff's action alleging ongoing violation of tax ordinance not time-barred; each illegal collection of tax was a new violation triggering a new limitations period].)

Here, as in *Aryeh,* Disney's obligation to pay royalties based on its licensing or other disposition of the mechanical reproduction rights to Gilkyson's songs was unquestionably a continuing one.[4] As alleged in the first amended complaint (consistent with the original complaint), the parties agreed in paragraph 6 of the single-song agreements that Gilkyson "will receive as a royalty '[an] amount of money equal to Fifty Percent (50%) of the net amount received by our music publisher *on account of licensing or other disposition of mechanical reproduction rights in and to material so written by you.*'" The first amended complaint also alleged Disney had issued quarterly royalty statements to Gilkyson and, after his death, to his heirs. The continuing nature of the obligation to pay periodic royalties renders each breach of that obligation separately actionable. (*Aryeh, supra,* 55 Cal.4th at p. 1201; see *Armstrong, supra,* 116 Cal.App.4th at p. 1392 [contract to provide periodic oil and gas royalties was severable, with each

---

[4] Whether that continuing obligation was breached by Disney's failure to pay royalties based on the use of Gilkyson's songs in DVDs and similar home entertainment or audiovisual media, as the Gilkyson heirs allege, is not the question presented in this appeal. As discussed, Disney's legal position is that the term "mechanical reproduction" does not encompass audiovisual media, which are controlled by a separate part of the agreement. This substantive legal question—whether Gilkyson's entitlement to royalties based on exploitation of mechanical reproduction rights included the use of the songs in the audiovisual media described—was not at issue in the trial court.

failure of the continuing obligation to pay a proper royalty separately actionable and subject to its own limitation period].) The result is that, while portions of the Gilkyson heirs' contract claim are undoubtedly time-barred, the action is timely as to those breaches occurring within the four-year limitations period preceding the filing of the original lawsuit.

Citing *Dillon v. Board of Pension Commrs.* (1941) 18 Cal.2d 427 (*Dillon*), Disney argues the continuous accrual doctrine does not apply in this case—and this action is time-barred in its entirety—because the Gilkyson heirs seek to establish in this lawsuit the existence of a new contract right (that is, the right to royalties on audiovisual reproductions of Gilkyson's songs). Disney's reliance on *Dillon* is misplaced.

In *Dillon* the widow of a Los Angeles police officer who had committed suicide in 1934 applied in 1938 to the Board of Pension Commissioners to recover a pension. At the time of her application, the city charter required such claims to be filed within six months of accrual; and, if the Board denied the claim, the applicant had three years from the date the claim accrued to file a petition for administrative mandate to reverse that decision. The Supreme Court held the claim accrued when the officer died, and the mandate action, filed more than three years after his death, was time-barred in its entirety. Although the Court recognized the right to receive periodic payments under a pension was a continuing one, it held plaintiff could not claim entitlement to periodic pension payments until she first established her right to the pension with the Board or, if the Board had denied her claim, with a timely writ of mandate that overturned its decision. Having failed to bring a timely petition for writ of mandate challenging the Board's finding she was not entitled to a pension, she could not claim a "continuing right" to a pension. (*Dillon, supra,* 18 Cal.2d at pp. 430-431.)

The Supreme Court later explained *Dillon's* holding was limited to the unique claims procedure available in pension cases (see *Howard Jarvis, supra,* 25 Cal.4th at p. 822) and rejected the contention, similar to the one Disney asserts here, that a party must always first establish a continuing right before it may utilize the continuous accrual doctrine. In *Howard Jarvis* plaintiffs, three taxpayer advocacy groups and three

9

individual taxpayers, challenged a city tax ordinance, arguing the ordinance unlawfully permitted collection of taxes without voter approval in violation of state law. The City of La Habra demurred, asserting the claim had accrued within three years of the date the ordinance was enacted and plaintiffs' claim, filed after that three-year deadline, was time-barred. Plaintiffs countered the right to a refund of taxes paid was a continuing one, triggering a new limitations period each time a tax was collected. The Supreme Court agreed plaintiffs' claim was timely under the continuous accrual doctrine and distinguished *Dillon*: "In *Dillon* . . . we held a mandamus action to compel payment of a widow's pension was barred because it was not brought within three years of her husband's death, even though, as we acknowledged, the right to receive a pension is a continuing one. Our holding depended, however, on the premise that the plaintiff could not establish the right to a pension in an action to compel payment of a particular installment . . . . We are aware of no comparable rule requiring an action to invalidate a tax be brought before, and separately from, an action for relief from particular payments of the tax. . . . Unlike in *Dillon,* then, plaintiffs' failure to establish the tax's invalidity within three years of its enactment does not preclude them from complaining, on grounds of such invalidity, of the tax's continuing collection." (*Howard Jarvis,* at p. 822; see *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463 [plaintiff was not obligated to seek a timely declaratory judgment as to right to pension before filing a claim for breach of pension obligation].)

*Armstrong, supra,* 116 Cal.App.4th 1375, a case involving periodic royalty payments under an oil and gas lease operating agreement, is particularly on point and reinforces our application of the continuous accrual doctrine in these circumstances. Under the operating agreement in *Armstrong* an accounting procedure was to be used to determine the amount of monthly oil and gas royalties due plaintiff based, in part, on the total quantity of gas produced during each period. Defendant argued the claim for breach of contract was time-barred because it was not brought within four years of the initial breach in March 1997. Plaintiff argued the contractual right to royalties was divisible, making each breach of the royalty contract separately actionable and any claim within the

10

four years prior to filing the lawsuit, timely. After examining the language of the contract as to the nature of the payments due, the court agreed the contract was divisible and a portion of plaintiff's claim timely under the continuous accrual doctrine. (*Id.* at p. 1389.) In reaching this conclusion, the Court of Appeal, like the Supreme Court in *Howard Jarvis, supra,* 25 Cal.4th at page 822, rejected defendant's argument the claim was barred under the analysis in *Dillon, supra,* 18 Cal.2d 427: "*Dillon* is distinguishable from the present case because Armstrong's contractual rights were not conditioned upon completing a claims procedure. Instead, Armstrong's right to receive a net revenue interest was established by the [contract]." (*Armstrong,* at p. 1392.)

Similarly here, the Gilkyson heirs' contract cause of action asserts the breach of an established contractual right to royalties, albeit one grounded in contract language that may ultimately require extrinsic evidence to determine its scope, not an expectation or inchoate right subject to confirmation in an uncompleted claims process. Under *Aryeh*, *Howard Jarvis* and *Armstrong* the Gilkyson heirs are entitled by virtue of the continuous accrual doctrine to seek recovery of royalties for use of their father's songs in home entertainment or audiovisual media for a period commencing four years before the filing of their complaint.

Faced with a wealth of Supreme Court and Court of Appeal authority against its position, Disney urges us to adopt the analysis of the federal district court in *Mappa Music Co. v. Universal-PolyGram Internat. Publishing, Inc.* (C.D. Cal., Dec. 17, 2001, No. CV 00-6593 ABC (AIJx)) 2001 U.S.Dist.LEXIS 24554 (*Mappa Music*), to find the Gilkyson heirs' claim time-barred in its entirety. *Mappa Music* involved a dispute over the ownership of an arrangement of the song "Gonna Get Along Without Ya Now," performed by the group Patience & Prudence, whose members were also part owners of Mappa Music Company. Mappa Music sued Universal-PolyGram primarily for copyright infringement and asserted a related contract claim alleging Universal-PolyGram had breached a letter agreement requiring it to pay Mappa Music a percentage of the retail price of all printed copies of the song arrangement sold. The district court, in its unpublished decision, concluded the copyright action and related declaratory relief

11

action were barred by the statute of limitations. (*Id.* at p. *23.) As for the breach of contract claim, the court ruled a single breach of contract had occurred and the claim had accrued the first time Universal-PolyGram failed to pay plaintiffs any royalties. The court rejected plaintiffs' continuous accrual argument reasoning, without citation to any California case, "The fact that the Letter Agreement gave rise to an ongoing obligation to pay royalty payments to plaintiff does not change this conclusion. . . . [T]his case does not involve an installment contract, with payments due at certain times. . . . Plaintiff 'could have sued for [its] share of the profits, for an accounting of any future profits, and/or for an injunction to prohibit future exploitation . . . .' [Citation.] Plaintiff will not be permitted to proceed now, after sitting on its rights for more than 40 years." (*Id.* at p.*24.)

We need not belabor our critique of *Mappa Music,* decided well before *Aryeh,* albeit a few months after the Supreme Court's decision in *Howard Jarvis,* which, as discussed, the *Mappa Music* court failed to cite, let alone address. Under California law the continuing right to receive royalties for Disney's disposition of mechanical reproduction rights created a divisible contract, with each breach of that right separately actionable and subject to its own limitations period. (See *Aryeh, supra,* 55 Cal.4th at pp. 1201-1202; *Howard Jarvis, supra,* 25 Cal.4th at p. 822.) To the extent the *Mappa Music* court ruled differently, we disagree with it. (See *Aryeh*, at p. 1202; cf. *Peterson v. Highland Music, Inc.* (9th Cir. 1998) 140 F.3d 1313, 1321 [statute of limitations did not bar rescission claim where contract created a continuing obligation, severable each time, to pay royalties: "[t]here is no fixed amount to be paid out over time under the Kingsmen's contract, but rather a continuing obligation to pay a portion of the profits and royalties on 'Louie, Louie" as the recording gets used over time"].)

Finally, the Gilkyson heirs urge us to apply the continuous accrual analysis to their claims for breach of the implied covenant of good faith and fair dealing and declaratory relief, which the trial court ruled were also barred by the statute of limitations. As to the claim for declaratory relief, they are correct; our analysis applies to, and effectively revives, the Gilkyson heirs' claim for declaratory relief. (See *City of Cotati v. Cashman*

12

(2002) 29 Cal.4th 69, 80 [a claim for declaratory relief cannot exist in the absence of a valid underlying claim].)

With respect to the cause of action for breach of the implied covenant of good faith and fair dealing, however, the trial court sustained Disney's demurrer not only on the ground the claim was duplicative of the breach of contract claim and barred by the statute of limitations, but also on the ground its order granting leave to amend after Disney's demurrer to the original complaint was sustained did not permit the Gilkyson heirs to add a new cause of action. (See *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 ["Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order. [Citation.] The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend."].) Other than asserting without elaboration that "it is reasonable and in context to allow a cause of action for breach of the implied covenant of good faith and fair dealing," the Gilkyson heirs provide no argument on appeal to challenge that alternate justification for sustaining the demurrer to this cause of action. (*Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1, 14; see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) Nonetheless, in light of our revival of the breach of contract and declaratory relief claims, the trial court may well decide to grant such leave if it is ultimately requested. That determination, however, is for the trial court in the first instance.

13

## DISPOSITION

The judgment of dismissal is reversed, and the matter remanded to the trial court with directions to vacate its order sustaining Disney's demurrer to the first amended complaint without leave to amend and to enter an new order overruling the demurrer to the breach of contract and the declaratory relief causes of action and sustaining the demurrer to the cause of action for breach of the implied covenant of good faith and fair dealing. The Gilkyson heirs are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

BLUMENFELD, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELIZA GILKYSON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>DISNEY ENTERPRISES, INC. et al.,<br><br>Defendants and Respondents. | B260103<br><br>(Los Angeles County<br>Super. Ct. No. EC061586)<br><br>ORDER CERTYFING OPINION<br>FOR PUBLICATION<br>(NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in this case filed January 27, 2016 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellant's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.              SEGAL, J.              BLUMENFELD, J.[*]

_____

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1