[Civ. No. 55888. Second Dist., Div. One. Jan. 24, 1980.]

HOBBY INDUSTRY ASSOCIATION OF AMERICA, INC.,
Plaintiff and Respondent, v.
EVELLE J. YOUNGER, as Attorney General, etc., et al.,
Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, Herschel T. Elkins, Assistant Attorney General, Michael R. Botwin and Ronald A. Reiter, Deputy Attorneys General, for Defendants and Appellants.

Patton, Boggs & Blow, Robert H. Kohler, Lanny J. Davis, Manatt, Phelps, Rothenberg & Tunney, Alan I. Rothenberg and Julia J. Rider for Plaintiff and Respondent.

OPINION

**ROTHMAN, J.**\*—Plaintiff and respondent (hereinafter referred to as Hobby) is the national trade association of the hobby products industry, representing about 2,000 manufacturers, wholesalers, retailers and other businesses involved in that industry. Appellant is the Attorney General of California (hereinafter referred to as Attorney General), involved in the enforcement of California's consumer protection laws.

Hobby sued the Attorney General for declaratory and injunctive relief, alleging that the Attorney General had erroneously interpreted and applied certain provisions of the Business and Professions Code, known

---

*Assigned by the Chairperson of the Judicial Council.

as the California Fair Packaging and Labeling Act.[1] Among the allegations of misapplication, Hobby asserted the following three which are in issue in this appeal:

(1) The Attorney General applied Business and Professions Code section 12606 to nonfunctionally slack filled packages that were not deceptive or fraudulent, whereas Hobby contended that this section applied only where such packages were used to "facilitate the perpetration of deception or fraud."

(2) The Attorney General applied Business and Professions Code section 12602 to wholesale and retail distributors of nonfunctional slack filled packages, without regard to the limitations set forth in subdivision (b) of section 12602, whereas Hobby contended that the section clearly applied only to those doing the packaging or labeling, or those specifying how it is to be done, and that it should not apply to mere distributors.

(3) The Attorney General claimed that in a case of an alleged violation of Civil Code section 3369 (now § 17200 of the Bus. & Prof. Code)[2] the defendants would be limited to the defenses set out in section 12606, whereas Hobby contends that there is no such limitation on defenses.

---

[1]Business and Professions Code sections 12601 through 12615.5 were enacted in 1969 "to protect purchasers of any commodity within its provisions against deception or misrepresentation. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons. [¶] It is hereby declared to be the policy of the Legislature to assist in attaining these goals." (§ 12601.)

Section 12602 makes it unlawful for "any person engaged in the packaging or labeling of any commodity for distribution or sale" with a package or label which does not conform to the chapter of which these sections are a part. Subdivision (b) of section 12602 provides that the prohibition does not apply to "wholesale and retail distributors" unless they "(1) are engaged in the packaging or labeling," or "(2) prescribe or specify...packag[ing] or label[ing]" or "(3) have knowledge of the violation of any provision of this chapter." The third above qualification was added to the law in 1977.

Sections 12603, 12604 and 12605 set out the labeling requirements.

Section 12606 deals with the packaging requirements, and provides that "[n]o container wherein commodities are packed shall have a false bottom, false sidewalls, false lid or covering, or be otherwise so constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud. No container shall be nonfunctionally slack filled, that is, filled to substantially less than its capacity for reasons other than (a) protection of the contents of such package or (b) the requirements of machines used for enclosing the contents of such package."

[2]Civil Code section 3369, which prohibited the granting of specific or preventive relief to enforce a penalty, forfeiture or penal law, provided for exceptions in cases of

Hobby sought a court declaration of what it contended was the correct interpretation of each of the legal points listed above, and injunctive relief against enforcement of the law as erroneously interpreted by the Attorney General against its members.

The Attorney General's answer, in essence, admitted that he sought to apply and interpret the law in the manner specified in the particulars listed above, but denied that those interpretations were erroneous.

The trial court rendered judgment on November 10, 1977, making the following declarations on the three issues:

(1)   That section 12606 does not prohibit nonfunctionally slack filled containers which are neither deceptive nor fraudulent.

(2)   That section 12602, subdivision (b) prohibits prosecution of wholesalers and retailers for distribution or sale of nondeceptive, nonfunctionally slack filled containers, and the Attorney General cannot take actions under sections 12606 or 3369 for same.

(3)   That any person charged under section 3369 (now § 17200 et seq.) with a violation of section 12606 may raise any defense to demonstrate its conduct is not unlawful or unfair, and is not limited to the defenses listed in section 12606.

On January 17, 1978, the court found that all Hobby members were bound by the November 10, 1977, judgment.

---

"nuisance or unfair competition." The section went on to provide that unfair competition could be enjoined, and that the term meant any "unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive."

In 1976 this section was amended. Now, following the prohibition against specific or preventive relief, the section states simply, "except in a case of nuisance or as otherwise provided by law." All the detail on unfair competitions are eliminated. Business and Professions Code sections 17200 to 17208, inclusive, were added to the law in 1977, and contain these provisions, among others:

Section 17200 defines unfair competition to "mean and include unlawful, unfair or fraudulent business practice...."

Sections 17202 and 17203 provide for specific, preventive and injunctive relief.

Section 17205 provides that the remedies and penalties under this chapter are cumulative to all other remedies and penalties available in other state laws.

Section 17206 sets out the penalty for a violation of the chapter.

Section 17207 provides for a civil penalty for violation of an injunction granted under the chapter.

Both parties appealed, however Hobby later abandoned its appeal. The parties agree that the trial court's interpretations on the above three issues are the substance of this appeal. Further, in appeal the Attorney General contends that since this court's decision will serve as a declaration of the law, it would not be necessary to remand in the event we disagree in any respect with the trial court's interpretation. Hobby does not dispute this proposition.

## DISCUSSION

### I

The first issue in this appeal is whether section 12606 makes unlawful packages having "nonfunctional slack fill" even when there is no other showing that the packaging is fraudulent or deceptive.[3] We hold that section 12606 prohibits all such nonfunctional slack fill packaging whether or not there is other proof of deception or fraud.

The full text of section 12606 reads as follows: "No container wherein commodities are packed shall have a false bottom, false sidewalls, false lid or covering, or be otherwise so constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud. *No container shall be nonfunctionally slack filled, that is, filled to substantially less than its capacity for reasons other than (a) protection of the contents of such package or (b) the requirements of machines used for enclosing the contents in such package.*

"Any sealer may seize any container which facilitates the perpetration of deception or fraud and the contents of such container. By order of the justice's, municipal or superior court of the township, city, or county within which a violation of this section occurs, the containers seized shall be condemned and destroyed or released upon such conditions as the court may impose to insure against their use in violation of this chapter. The contents of any condemned container shall be returned to the owner thereof if he furnishes proper facilities for such return." (Italics added.)

---

[3]The judgment, in pertinent part, stated: "The California Fair Packaging and Labeling Act (Cal. Business and Professions Code, § 12601, *et seq.*), including, in particular, Section 12606 of the Business and Professions Code, does not prohibit nonfunctionally slack filled containers, as defined therein, which are neither deceptive nor fraudulent."

In interpreting an act of the Legislature, the court's role is limited "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.)

■ If the language of a provision is clear and unambiguous, there is no need for judicial construction, and courts should not add to or alter its plain meaning. (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 260 [148 P.2d 649]; *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 207 [114 P.2d 592]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) At the same time, all provisions of a particular statute must be construed as a whole, rather than piecemeal, so as to give purpose and effect to all its component parts. (*People* v. *Comingore* (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723]; *Steilberg* v. *Lackner* (1977) 69 Cal. App.3d 780, 785 [138 Cal.Rptr. 378].)

■ In the instant matter, regardless of whether the statutory phrase containing the nonfunctional slack filled prohibition is read according to the plain meaning of its terms, whether it is construed in light of the statutory scheme, the result is the same. The language in dispute (i.e. the second sentence of § 12606), is a complete and unambiguous provision banning nonfunctionally slack filled packages. In this sentence there is no mention of deception or fraud, nor any connecting reference to the preceding sentence which uses the words deception and fraud. The two opening sentences of section 12606 constitute at least two[4] separate prohibitions. The first sentence bans containers with false bottoms, false sides or false lids, or constructed or filled in some other manner so as to facilitate the perpetration of deception or fraud. The second sentence prohibits packaging with nonfunctional slack fill.

The opening provisions of the Fair Packaging and Labeling Act, section 12601, provides: "This chapter is designed to protect purchasers of any commodity within its provisions against deception or misrepresentation. Packages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should fa-

---

[4]The question whether the "deception and fraud" language modifies the whole first sentence (i.e. including the false bottom, side and lid provision) or just the language "otherwise so constructed or filled" has not been raised in the instant case.

cilitate value comparisons. [¶] It is hereby declared to be the policy of the Legislature to assist in attaining these goals."

Section 12606 furthers the second goal of providing the consumer with accurate information in the form of the packaging about the quantity of contents and facilitates value comparisons. Sections 12603 to 12605 aim at this same goal in terms of labeling. It should be noted that these labeling sections also contain no reference to deception or fraud.

Historically, section 12606 was an amalgam of existing California statutes and provisions of the Federal Fair Packaging and Labeling Act, 15 United States Code section 1451 et seq. Both the first sentence of the first paragraph, and the second paragraph of section 12606 were part of California law before the current enactment. (See former Bus. & Prof. Code, § 12605, amended by Stats. 1939, ch. 43, § 1, p. 464, amended by Stats. 1941, ch. 256, § 1, p. 1369.) The second sentence of section 12606 (the language specifically prohibiting nonfunctional slack fill) came from the Federal Fair Packaging and Labeling Act (15 U.S.C. § 1454(c)(4)). This dual genesis of the language of section 12606 indicates that there was not necessarily any intent in the composition of the act to engraft a deception and fraud requirement on the second sentence.

Our conclusion that the nonfunctional slack fill prohibition reaches all forms of nonfunctional slack fill (unless excepted) promotes the Legislature's own express policy "to obtain accurate information as to the quantity of the contents and should facilitate value comparisons" (§ 12601). The whole statutory scheme, aimed at implementing this policy, establishes a number of specific prohibitions which the Legislature views as unlawful packaging and labeling, undoubtedly based on the belief that such practices are inherently deceptive. We see nothing in the language employed to affect this scheme that requires, in addition to this particular violation (e.g. nonfunctional slack fill, or improper label) that there be additional proof of actual deception or fraud. If such additional proof were required, this carefully detailed legislation would have been pointless because the legislation would then merely have accomplished the establishment of an act saying that it is unlawful to defraud others, which was already the law long before enactment of the California Fair Packaging and Labeling Act. It is clear that a contributing need for such consumer protection legislation is the

difficulty of proving fraud. Hobby's contentions in this regard would, we think, make this elaborate statutory scheme practically pointless.

An analysis of the facts of marketing and advertising techniques, as recognized by the Legislature as well as by the United States Congress provided the rationale for legislation aimed at enabling the consumer to make an informed choice. For example, in deliberations preceding the adoption of 15 United States Code section 1451 et seq., a congressional committee noted that "packages have replaced the salesman. Therefore, it is urgently required that the information set forth on those packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products." (H.R. No. 2076, 89th Cong., 2d Sess. (Sept. 23, 1966) p. 7.)

Because the package functions as the sales clincher, the "final silent salesman," it was clear that a package's format and label needed to be controlled. Very often package size suggests the size of the item housed therein: a big package implies big contents. Such is as true in hobby packaging as it is in soap packaging. Further, in hobby packaging, where a significant part of the purchasing public is composed of children, the packaging may well be even more important in accomplishing sales. ■ Hence, containers which are nonfunctionally slack filled (i.e. filled to less than capacity for any reason other than protection of the contents or packing machinery requirements) are viewed by our lawmakers as serving no useful function to the consumer. Rather, they can be viewed as implicitly imparting inaccurate information, obfuscating the consumer's search for the true quantity or volume of the contents, and consequently, impairing meaningful value comparisons: "'Slack filling'...is an unlawful trade practice. For a seller to package goods in containers which—unknown to the consumer—are appreciably oversized, or in containers so shaped as to create the optical illusion of being larger than conventionally shaped containers of equal or greater capacity, is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods...." (*The Papercraft Corp.* (1963) 63 F.T.C. 1965, 1992. See also *Burry Biscuit Corp.* (1941) 33 F.T.C. 89, *Marlborough Laboratories Inc.* (1941) 32 F.T.C. 1014.)

Nonfunctional slack fill, even in contexts where the more traditional forms of deception such as false labeling are not present, nevertheless contributes to consumer confusion. Clear disclosures on labels, scale

drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive. The elimination of consumer misinformation, regardless of proof of actual fraud or deception, is, in our opinion, the basis of the nonfunctional slack fill prohibition of section 12606, and, accordingly, we construe that section 12606 as prohibiting all forms of nonfunctional slack fill, without the need for any further showing of fraud or deception.

Hobby argues that because the second paragraph of section 12606 provides for a remedy of seizure of packages which perpetrate deception or fraud, it would be illogical for us to conclude that the nonfunctional slack fill provision is not amenable to that remedy by holding that no proof of deception or fraud is required for a nonfunctional slack fill violation. The answer is twofold. Firstly, as we have already noted, the slack fill provision was inserted into this act from another historic source, and although the Legislature seems to have not created exactly parallel enforcement provisions to accommodate the addition, we have been cited to no rule which demands such from the Legislature. Secondly, it is incorrect to assert that there are no sanctions other than the second paragraph for a nondeceptive slack fill violation. The remedies of section 17200 for unlawful business practices are available, in addition to the provision which makes any violation of the chapter a misdemeanor (§ 12615.5).

Hobby points out that if our view were correct, packages with clear cellophane coverings showing the exact contents of the material inside, with no potential for deception, would be a violation. It would appear that such packaging would not contain an inherent possibility of deception, and yet could be a violation. The existence of this example, however, does not make our ruling illogical because in all generally drafted regulatory laws there can exist specific examples of regulated matter whose inclusion might not necessarily fulfill the purpose of the law. Further, the existence of an anomoly does not change what we view as the law's plain meaning. The drafting of a clear cellophane exception, if such were deemed appropriate, is a legislative matter. Hobby also argues that costs of packaging will substantially increase if their view is rejected. We see no way to accommodate the industries' concerns in this regard and at the same time render a faithful interpretation of the law.

## II

■ The trial court ruled that Business and Professions Code section 12602, subdivision (b)[5] precluded prosecutions of wholesale or retail distributors of nondeceptive nonfunctionally slack filled packages, and that the Attorney General could not institute any actions against wholesalers or retailers for engaging in that practice under the California Fair Packaging and Labeling Act, the unfair competition statutes, or "otherwise."[6] We find that the trial court was correct, and that retailers are, in general, immune under the act unless these individuals either a) actually package or label the nonconforming commodities themselves, b) prescribe the manner of packaging, or c) have knowledge of the commodities' nonconforming nature (this last being added to the law in 1977). Because of our conclusion in the preceding section (that nonfunctional slack fill is prohibited without a further showing of fraud or deception), the word "nondeceptive" should not be a part of the ruling. Wholesalers and retailers may be in violation if one of the three exceptions exists.

The Attorney General contends that the trial court erred in precluding actions against wholesalers and retailers under *other* code sections, maintaining that suits may be brought against them under the unfair competition statutes (Bus. & Prof. Code, § 17200 et seq., former Civ. Code, § 3369). We disagree. There is nothing in section 17200 et seq. which reimposes the liability on wholesalers and retailers which is expressly excluded by section 12602. Although the Attorney General has

---

[5]Business and Professions Code section 12602, in pertinent part, reads: "(a) It shall be unlawful for any person engaged in the packaging or labeling of any commodity for distribution or sale, or for any person (other than a common carrier for hire, a contract carrier for hire, or a freight forwarder for hire) engaged in the distribution of any packaged or labeled commodity, to distribute or to cause to be distributed any such commodity if such commodity is contained in a package, or if there is affixed to that commodity a label, which does not conform to the provisions of this chapter...

"(b) The prohibition contained in subsection (a) shall not apply to persons engaged in business as wholesale or retail distributors of commodities except to the extent that such persons (1) are engaged in the packaging or labeling of such commodities or (2) prescribe or specify by any means the manner in which such commodities are packaged or labeled or (3) have knowledge of the violation of any provision of this chapter..."

[6]The judgment, in pertinent part, stated: "Business and Professions Code § 12602(b) prohibits prosecutions of wholesalers or retailers for distribution or sale of nondeceptive, nonfunctionally slack filled containers, and the Attorney General is precluded from instituting actions under Section 12606 or Section 3369 or otherwise against wholesalers or retailers for the distribution or sale of nondeceptive, nonfunctionally slack filled containers."

broad powers under common law to institute actions involving the rights and interests of the state and its citizens (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15 [112 Cal.Rptr. 786, 520 P.2d 10]) this power arises only "in the absence of any legislative restriction." (*D'Amico* v. *Board of Medical Examiners, id.*) Sections 12606 and 12602 specifically restrict the scope of the prohibition against nonfunctional slack fill to wholesalers or retailers who fall within one of the three categories recited above. Although the Supreme Court has construed the orbit of the unfair competition statutes expansively (*People* v. *McKale* (1979) 25 Cal.3d 626, 631-632 [159 Cal.Rptr. 811, 602 P.2d 731], and *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111-113 [101 Cal.Rptr. 745, 496 P.2d 817]), it cannot be said that this embracing purview also encompasses business practices which the Legislature has expressly declared to be lawful in other legislation. (See *Barquis, supra,* 7 Cal.3d 94, 111, fn. 12.)

We therefore hold that wholesalers or retailers are exempt from the prohibition of section 12606 in terms of the exclusion in section 12602, subdivision (b), and are also immune from actions under section 17200 et seq. of the Business and Professions Code.

## III

The Attorney General's final contention is that the trial judge erred in ruling that a defendant charged with a violation of section 12606 is not limited to the defenses set forth therein.[7] In the Attorney General's view a violation of the nonfunctional slack fill packaging law (Bus. & Prof. Code, § 12606) is not only a misdemeanor (under § 12615.5), but is also subject to the specific or preventive relief remedies established under Business and Professions Code section 17200 et seq. as unfair competition, which includes any "unlawful... business practice." In such a civil enforcement, the Attorney General contends, the subject of such an action would have available the defense that the nonfunctional slack fill law is not violated (i.e. that the packaging is not definitionally nonfunctional slack filled).

---

[7]The trial judge's ruling read: "Any person charged under Civil Code Section 3369 (now Business & Professions Code § 17200 *et seq.*) with a violation of Section 12606 of the Business and Professions Code may raise any and all appropriate defenses to demonstrate that his conduct is neither unlawful nor unfair, and is not limited to defenses that are set forth in Section 12606, namely protection of the contents of the packages or requirements of the machines for enclosing the contents of the packages."

Hobby contends that it would be wrong and unfair to deprive a party sued under section 17200 et seq. of any defenses normally available to the subject of specific or preventive relief actions, and are not limited to the defenses which are in essence contained within section 12606. Hobby claims that one can raise any and all appropriate factual defenses of business necessity or packaging efficiency, and that a manufacturer of a package that is not deceptive should be able to show that the packaging is not unfair, unlawful or fraudulent, and to show that a valid "business consideration" makes the packaging fair and lawful.

It is apparent that the remedies of section 17200 et seq. apply to any unlawful business practice, and that the nonfunctional slack fill prohibitions of section 12606 unquestionably fall within the broad definition of an unlawful business practice: "[¶] Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.' (Bus. & Prof. Code, § 17200.) California courts have consistently interpreted such language broadly. ██ An 'unlawful business activity' includes '"anything that can properly be called a business practice and that at the same time is forbidden by law."' (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 . . . .) The Legislature 'intended . . . to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.' (*Id.*, at p. 111.)" *People* v. *McKale* (1979) 25 Cal.3d 626, 631-632 [159 Cal.Rptr. 811, 602 P.2d 731]. Nothing within the language of any of the unfair competition enforcement provisions, sections 17200 through 17208, sets out the defenses available to a person sued thereunder. These sections are obviously designed to provide clear authority to deal with unfair competition as it is broadly defined therein, which can include any unlawful business practice. There are no statutory defenses along the lines contended for by Hobby, nor do we find any inference in any of the language of the chapter's sections that would support a conclusion that one can assert defenses such as business considerations, or lack of deception or fraud. Since the section 17200 et seq. enforcement vehicle does not impose definitional limitations as to what are the unlawful business practices within its purview, the determination of the various unlawful business practices covered by the act must be made by looking to the particular proscriptive legislation itself which is carried into section 17200 by its broad language. Any defenses available under that particular unlawful business practice would be available in the injunctive action.

Accordingly, we look to the particular unlawful practice in question (§ 12606) to determine the available defenses, rather than to the section which creates the additional enforcement vehicle (§ 17200). In so doing, we agree with the Attorney General's view and find that the defenses here are necessarily confined to those apparent within section 12606, as we have defined the meaning of that section earlier in this opinion. Those do not include the wider variety of defenses urged by Hobby. In particular, we have already pointed out that nonfunctional slack fill in packaging is prohibited by section 12606 without the necessity of an independent showing of fraud or deceit. Hence, defenses which go to negating the elements of fraud or deceit are of no moment to a person charged with a violation of the nonfunctional slack-fill prohibition in section 12606. The only defense available is that the conduct is not unlawful within section 12606, namely that the package is not nonfunctionally slack filled (it is not "filled to substantially less than its capacity and for reasons other than (a) protection of the contents of such package or (b) the requirements of machines used for enclosing the contents in such package"). (Bus. & Prof. Code, § 12606.)

CONCLUSION

The three sections of the judgment of the trial court reviewed in this opinion are modified to read as follows:

1. The California Fair Packaging and Labeling Act (Bus. & Prof. Code, § 12601 et seq.), including in particular Business and Professions Code section 12606 prohibits nonfunctionally slack filled containers which are neither deceptive or fraudulent.

2. The California Fair Packaging and Labeling Act (Bus. & Prof. Code, § 12602, subd. (b)), prohibits the prosecution of wholesalers or retailers for distribution or sale of nonfunctionally slack filled containers except to the extent such persons are engaged in the packaging or labeling of such commodities, prescribe or specify by any means the manner in which such commodities are packaged or labeled or (3) have knowledge of the violation of the California Fair Packaging and Labeling Act, and such prohibition or prosecutions extends to actions under Business and Professions Code section 17200 et seq.

3. Any person charged under Business and Professions Code section 17200 et seq. with the unlawful business practice of packaging nonfunctional slack filled containers in violation of Business and Profes-

sions Code section 12606 may only raise the defense that the container is not nonfunctionally slack filled, that is, that the container is not filled to substantially less than its capacity for reasons other than protection of the contents of such package or the requirements of machines used for enclosing the contents in such package. Defenses of lack of deception or fraud or that the person's conduct is not unlawful or unfair other than that expressed in the language of section 12606 are not available to such person.

Otherwise than as so expressly modified the judgment is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 20, 1980.