638

Michael TURCIOS, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

CARMA LABORATORIES, INC.,
a Wisconsin corporation,
Defendant.

No. CV 12–8487–JGB (Ex).

United States District Court,
C.D. California.

Jan. 7, 2014.

640

Christopher P. Ridout, Caleb L.H. Marker, Devon Marie Lyon, Ridout Lyon and Ottoson LLP, Long Beach, CA, for Plaintiff.

Rachel R. Davidson, Michael J. Bettinger, J. Michael Keyes, K and L Gates LLP, San Francisco, CA, Mikal J. Condon, Boies Schiller and Flexner, Oakland, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### [Motion filed May 3, 2013]

JESUS G. BERNAL, District Judge.

The Court has received and considered all papers filed in support of and in opposition to Plaintiff's Motion for Class Certification, as well as the arguments advanced by counsel at the July 1, 2013 hearing. For the reasons discussed below, the Court DENIES Plaintiff's Motion for Class Certification.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Michael Turcios filed his Complaint as a class action in the California Superior Court for the County of Los Angeles on September 6, 2012. Defendant Carma Laboratories, Inc. ("Carma Labs") removed the action to this Court on October 3, 2012. (*See* Not. of Removal, Ex. B, Doc. No. 1.) On December 20, 2012, Plaintiff filed his First Amended Complaint ("FAC"), alleging claims for: (1) violation of the False Advertising Laws ("FAL"), Bus. & Prof.Code § 17500 *et seq.*; (2) violation of California's Unfair Competition Laws ("UCL"), Bus. & Prof.Code § 17200 *et seq.*; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.* (FAC, Doc. No. 32.)

On April 8, 2013, Defendant filed a Motion for Sanctions under Federal Rule of Civil Procedure 11. (Doc. No. 41.) Plaintiff opposed the Motion for Sanctions on April 19, 2013 (Doc. No. 46), and Defendant replied on April 26, 2013 (Doc. No. 47). This Court denied Defendant's Motion for Sanctions on May 2, 2013. (Doc. No. 52.)

On May 3, 2013, Plaintiff filed a Motion to Certify Class ("Motion," Doc. No. 56), attaching the Declaration of Christopher P. Ridout ("Ridout Decl.," Doc. No. 57). In his Motion, Plaintiff invokes Federal Rule of Civil Proce-

dure 23(a) and 23(b)(3), and asks the Court to certify a class for his UCL and CLRA claims,[1] composed of:

All persons residing in California who purchased Defendant's product Carmex in a 0.25 oz plastic jar at a location in California at any time during the Class Period.

(Mot. at 10.)

Defendant opposed the Motion on June 3, 2013 (Doc. No. 60), attaching the Declaration of Rachel R. Davidson ("Davidson Decl.," Doc. No. 60–1) and the Declaration of Paul Woelbing ("Woelbing Decl.," Doc. No. 60–3). Plaintiff replied on June 17, 2013 (Doc. No. 66), attaching the Declaration of Bradley C. Buhrow ("Buhrow Decl.," Doc. No. 66–1).

On July 8, 2013, the Parties filed supplemental briefing on the Motion, per the Court's July 1, 2013 order. (Doc. Nos. 69, 71.)

### B. Plaintiff's Allegations

Plaintiff alleges that prior to September 2010, Carmex packaged and distributed .25 oz plastic jars of Carmex lip balm in packaging that contains a false bottom, deceptive covering, and/or nonfunctional slack fill. (FAC ¶¶ 2, 16.) The jar had a thick bottom, and the total plastic comprised more than seventy percent of the jar ("Original Carmex Jar"). (*Id.* ¶¶ 16, 18.) After September 2010, Defendants eliminated the thick bottom of the jar by creating a concave bottom, but packaged the product using a cardboard backing or opaque sticker, which prevented the consumer from viewing the hollow space at the point of sale ("Green Carmex Jar"). (*Id.* ¶¶ 18–20, 40.) The standard packaging concealed that the bottom of the Green Carmex Jar is hollow, comprising 36% of the overall volume of the jar. (*Id.* ¶ 22.) Additionally, both Carmex jars contain forty percent less product than the Original Carmex Tube, which appears smaller because the total container volume is less, but sells for the same price. (*Id.* ¶ 25.)

Plaintiff purchased this product, before and after September 2010, believing that the entire Carmex jar was filled. (*Id.* ¶¶ 3–4, 26.) Plaintiff alleges that he would not have

paid the price he paid for it had he known that the entire Carmex jar was not filled. (*Id.* at ¶ 5.)

### II.   LEGAL STANDARD [2]

Federal Rule of Civil Procedure 23 governs class actions. Fed.R.Civ.P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing Fed.R.Civ.P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977) (citing *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir.1969)).

In addition to these prerequisites, a plaintiff must satisfy one of the three categories set out in Rule 23(b) in order to maintain a class action. Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), a class must satisfy two conditions: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Rule 23(a) and at least one of the Rule 23(b) requirements. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir.2001). To meet its burden, the moving party " 'must provide facts to satisfy these requirements; simply repeating the language of the rules ... is insufficient.' " *In re Paxil Litig.*, 212 F.R.D. 539, 543 (C.D.Cal.2003) (quoting *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 443 (N.D.Cal.2001)) (ellipsis in original).

"The decision to grant or deny a motion for class certification is within the trial

---

1. Plaintiff does not attempt to certify a class based on his FAL claim.

2. Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

court's discretion." *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.2010). A class certification motion requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart Stores, Inc., v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel Workers v. ConocoPhillips Co.,* 593 F.3d 802, 809 (9th Cir.2010).

## III. DISCUSSION

### A. Standing

Standing is a threshold issue that should be resolved before class certification. *Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir.2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue.")(quoting 3 Herbert B. Newberg on Class Actions § 3:19, at 400 (4th ed. 2002)); *LaDuke v. Nelson,* 762 F.2d 1318, 1325 ("Standing, however, is a jurisdictional element that must be satisfied prior to class certification."); *Bristow v. Lycoming Engines,* 2008 WL 850306, at *7 (E.D.Cal. March 28, 2008) ("If a proposed class member has not in fact suffered damages, class certification is improper under the UCL and CLRA.").

Defendant argues that Plaintiff lacks standing because he cannot show he relied on any misrepresentation or causation when making his Carmex jar purchases since he testified that: he never looked at the price or volume, he knew the actual volume of the product before the statutory period, and he knew that the jar had an indentation, but continued purchasing Carmex in the packaging at issue because he enjoyed the product. (Opp. at 18–19.) Plaintiff argues that 1) his UCL claim does not require proof of reliance and 2) he meets the standing requirement for his CLRA claim because he testified that he relied on Defendant's misrepresentation when he purchased his Carmex. (Pl. Supp. Br. at 1.)

*CLRA Standing*

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ.Code § 1770(a). A consumer who suffers damage as a result of another's use of a practice declared to be unlawful by CLRA can bring an action for relief. Cal Civ.Code § 1780. The statute requires that " 'plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm.' " *In re Vioxx Class Cases,* 180 Cal. App.4th 116, 126, 103 Cal.Rptr.3d 83 (2009); *see also Webb v. Carter's Inc.,* 272 F.R.D. 489, 501 (C.D.Cal.2011).

In his supplemental brief, Plaintiff acknowledges that his CLRA claim requires proof of reliance. (Pl. Supp. Br. at 1.) To support that he relied on Defendant's alleged misleading conduct in making his Carmex purchases, Plaintiff points to his testimony that he believed the Carmex jars were full until 2012, when he discovered that the jar had an indent in the bottom. (Reply at 12.) This does not demonstrate that Plaintiff relied on the external volume of the jar when he purchased the lip balm, particularly taken in context with the rest of his testimony. Plaintiff testified that he had no expectation about how much product he was getting when he first purchased the lip balm in 2006, he knew he was getting .25 ounces before he purchased the product, he was satisfied with the product and did not have any concerns or complaints after he finished his first and second .25 ounce jars, he continued to purchase the Carmex .25 ounce jars without reading the information on or inspecting the jar, he had no expectation of how much product he was getting, he did not put any thought into what price was reasonable, and he would still use Carmex today if he needed it. (Ridout Decl., Ex. D at 38:2–8; 44:4–7; 44:22–45:4; 50:15–21; 56:8–25; 58:9–15; 59:13–17; 65:20–22; 68:8–23; 69:11–14; 71:7–22; 90:2–15.)

*UCL Standing*

▮▮▮ Plaintiff seeks to certify class claims arising from the UCL's unlawful prong, predicated on a violation of the CLRA and Fair Packaging and Labeling Act ("FPLA"). (Mot. at 7.) In 2004, Proposition 64 amended the UCL to limit standing to

those who have suffered "injury in fact and have lost money or property as a result of such unfair competition." *Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal.4th 223, 227, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006). There must be a nexus between the alleged unfair competition and a plaintiff's alleged injury. *Hall v. Time,* 158 Cal. App.4th 847, 849, 70 Cal.Rptr.3d 466 (2008) ("[T]he phrase 'as a result of' in the UCL imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property."); *Daro v. Superior Court,* 151 Cal.App.4th 1079, 1099, 61 Cal.Rptr.3d 716 (2007) ("When a UCL action is based on an unlawful business practice .... there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").

If the predicate statute is based on misrepresentation, the plaintiff must show reliance in order to have UCL standing. *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1363, 108 Cal.Rptr.3d 682 (2010). ("[I]n light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of Tobacco II applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception.") The CLRA prohibits deceptive practices. Therefore, Plaintiff is required to show reliance to have standing to bring a UCL claim based on the CLRA. *See Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191, at *2 (N.D.Cal. April 16, 2013). As discussed above, Plaintiff has not shown that he relied on any allegedly deceptive practices when making his Carmex purchases.

Citing to *Galvan v. KDI Distribuation Inc.,* No. 8–999, 2011 WL 5116585 (C.D.Cal. Oct. 25, 2011), Plaintiff seems to assert that he has UCL standing because a violation of the FPLA constitutes a UCL violation that does not require proof of reliance. (*Id.* At 7–8, Pl. Supp. Br. at 3–8.) Plaintiff is correct that UCL actions not

based on a fraud theory do not require actual reliance. *In re Tobacco II,* 46 Cal.4th 298, 326, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009). "In those actions, the plaintiff must simply show that the alleged violation caused or resulted in the loss of money or property." *Medrazo v. Honda of North Hollywood,* 205 Cal.App.4th 1, 12, 140 Cal.Rptr.3d 20 (2012).

The Court is not aware of any authority that supports the proposition that a violation of the FPLA creates automatic UCL standing for an individual plaintiff. A plaintiff asserting a UCL claim based on the FPLA must still show that the alleged violation caused or resulted in the loss of money or property. *Medrazo,* 205 Cal.App.4th at 12, 140 Cal.Rptr.3d 20; *see also Peterson v. Cellco P'ship,* 164 Cal.App.4th 1583, 1590, 80 Cal.Rptr.3d 316 (2008) (finding that the trial court properly sustained the defendant's demurrer because plaintiffs lacked standing under section 17204, even where the plaintiffs claimed that the a violation of the Insurance Code gives rise to a cause of action for the UCL).

Plaintiff has not presented any evidence that his alleged economic injury occurred as a result of Defendant's alleged violation of the FPLA. Plaintiff testified that he started purchasing Carmex, without comparing it to other products, because he heard it was a good product. Additionally, he testified that he did not inspect the Carmex jar prior to his subsequent purchases and does not provide any reason other than his chapped lips and the quality of the product for those subsequent purchases. (Ridout Decl., Ex. D at 39:5–40:19, 42:1–3, 57:20–58:1, 63:8–12; 65:20–22.)

"In a class action, the plaintiff class bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 979 (9th Cir.2011). Therefore, as the evidence before the Court demonstrates that Plaintiff has not met the necessary reliance and causation requirements, the Court finds that Plaintiff has not demonstrated that he has standing to bring his CLRA or UCL claims on behalf of the class.[3]

---

**3.** The Court does not express an opinion as to whether this evidence would be sufficient to

withstand a motion for summary judgment.

## B. Ascertainability

■ "In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal.2011); *see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D.Cal.2002) ("Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3)."). "Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D.Cal.1999). The class definition must allow future courts to determine who was and was not bound by the judgment. *Deitz v. Comcast Corp.*, No. 06–06352, 2007 WL 2015440, at *8 (N.D.Cal. July 11, 2007).

■ Defendant argues that Plaintiff's proposed class is not ascertainable because it is not sufficiently definite and there is no feasible method of proving membership the Court cannot identify the California residents who purchased the product, and the frequency with which they purchased the product. (Opp. at 11–13.) Additionally, Defendant argues that the class is unascertainable because it is overbroad, including Carmex purchasers who were not deceived by the alleged misrepresentation or suffered no damages. (*Id.* at 14.)

Plaintiff contends that the class is sufficiently ascertainable because "all that this required at this stage to meet the ascertainability requirement is that the class be defined in objective terms." (Reply at 3–4.)

The Court agrees with Defendant that the proposed class is not sufficiently ascertainable because it is overbroad. Defendant has presented evidence of its full refund policy. (*See* Woelbing Decl., Ex. F, Ex. G.) At a minimum, the proposed class is overbroad because it would include consumers who already received refunds and, therefore, have not suffered any damages. *See Stearns v.*

*Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1152 (N.D.Cal.2010).

■ "A lack of ascertainability alone will general not scuttle class certification." *Red v. Kraft Foods*, 2012 WL 8019257, at *6 (C.D.Cal. April 12, 2012). Thus, although the Court is inclined to deny class certification on this basis alone, the Court assesses whether the Rule 23 factors have been met.

## C. Federal Rule of Civil Procedure 23(a)

### 1. Numerosity

■ In determining whether under Rule 23(a)(1) joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D.Cal. 1996). Additionally, there is no particular number cut-off, as the specific facts of each case may be examined. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594 (E.D.Cal.1999). Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(4). *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993).

Courts, additionally, have held that "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 370 (C.D.Cal. 1982). Courts have held that numerosity is satisfied when there are as few as 39 potential class members. *Patrick v. Marshall*, 460 F.Supp. 23, 26 (N.D.Cal.1978).

■ Plaintiff argues that given the large Carmex sales numbers, "it is reasonable to assume that a sufficient amount of unique individuals purchased the Carmex jar in California to satisfy the numerosity requirement." (Mot. at 11–12.) Defendant does not contest numerosity. (Opp. at 11 fn. 5.)

Thus, the Court finds that the numerosity requirement is satisfied here.

### 2. Commonality

■ Courts have construed Rule 23(a)(2)'s commonality requirement permis-

sively. *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998)); *see also Haley,* 169 F.R.D. at 648 ("[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class.").

Plaintiff contends that the commonality requirement is satisfied because there are common issues, such as whether the Carmex jars violated the FPLA and UCL, and Defendant's defenses would be common to all class members. (Mot. at 12.) Plaintiff asserts that for claims based on the UCL's unlawful prong, a violation of the underlying law is a per se violation and a plaintiff does not need to prove actual reliance. (*Id.* at 7–8.) Additionally, Plaintiff asserts that the test for reliance for a CLRA claim is an objective standard and as long as a plaintiff can show that material misrepresentations were made, an inference of reliance arises for the entire class. (Reply at 5–6.)

Defendant argues that Plaintiff's proposed class does not meet the commonality requirement because both Plaintiff's CLRA and UCL claims require proof of reliance, and Plaintiff misconstrues the slack fill statute. (Opp. at 8–11.) Therefore, there is no common answer because: 1) there is no common misrepresentation because the class includes those purchasers who understood the actual volume of the Carmex jar; 2) whether the Carmex jar's construction was material to each customer's purchasing decision is an individual inquiry; and 3) Plaintiff cannot show that all class members suffered the same injury because he cannot show that all class members relied on the alleged misrepresentation. (*Id.* at 14–18.)

*CLRA Claim*

▪ Classwide causation for a CLRA claim may be established by materiality. *In re Vioxx Class Cases,* 180 Cal.App.4th at 129, 103 Cal.Rptr.3d 83. "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Id.* Under

California law, a misrepresentation or omission is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question ...." *Steroid Hormone Prod. Cases,* 181 Cal.App.4th 145, 157, 104 Cal.Rptr.3d 329 (2010). "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1022–23 (9th Cir.2011) (quoting *In re Vioxx Class Cases,* 180 Cal.App.4th 116, 129, 103 Cal. Rptr.3d 83 (2009)).

▪ Here, Defendant has put forth persuasive evidence that materiality and reliance is an individualized question, not appropriate for class certification. Defendant presents evidence that consumers' behavior varies even when there is a common awareness of the alleged misrepresentation. Defendant's evidence shows that some consumers were aware of the particular dimensions and design of the Carmex Green Jar, and continued to purchase the lip balm. (*See* Woelbing Decl., Ex. D, Ex. K.)

Thus, the Court concludes that the elements of reliance and materiality are not subject to common proof and individual issues predominate with respect to the CLRA claim.

*UCL Claim*

▪ As discussed above, to prove a violation of the CLRA, a plaintiff must show reliance, which is an individualized inquiry in this case. Thus the commonality requirement is not met for Plaintiff's UCL claim, to the extent it rests on a violation of the CLRA.

Relying on *Hobby Industry Ass'n of Am., Inc. v. Younger,* 101 Cal.App.3d 358, 161 Cal.Rptr. 601 (1980), Plaintiff argues that the FPLA does not require reliance and, therefore, he does not need to show reliance to succeed on a UCL claim predicated on the FPLA. In *Hobby Industry,* the plaintiff sued the Attorney General for declaratory and injunctive relief, alleging in that the Attorney General had erroneously interpreted and applied certain provisions of the FPLA. The

Court held that "section 12606 prohibits all such nonfunctional slack fill packaging whether or not there is other proof of deception or fraud," 101 Cal.App.3d at 364, 161 Cal.Rptr. 601, the Court made no holding as to the elements required to bring a private action predicated on the statute.

■■■■ First, Defendant counters that Carmex's packaging falls into one of the statutory exceptions to the definition of nonfunctional slack fill enumerated in Section 12606(b). Specifically, Defendant argues that the Carmex jar is filled to less than capacity because of "[t]he requirements of the machines used for enclosing the contents of the package." § 12606(b)(2). (Opp. at 10–11.) To support this argument, Defendant provides evidence that the machinery used to package the lip balm, which has been used for thirty years, requires a heavier bottom, and a change in weight or volume in product within the jars would require Defendant to reengineer the filling system and lose the iconic shape of the Carmex jar. (*See* Davidson Decl., Ex. B at 136:4–138:13; Ex. C at 25:24–27:11, 120:7–121:12, 125:25–130:13.) Because the design of the Carmex jars falls into a statutory exception, deception or fraud, and a showing of reliance, are required. Thus, as reliance is an individualized inquiry here, the commonality requirement is not met for Plaintiff's UCL claim to the extent it is predicated on § 12606(b).

Second, Defendant argues that *Hobby Industry*'s holding does not apply to the prohibition outlined in § 12606(a), which governs false bottoms. Indeed, the *Hobby Industry* court understood the subsections to have different requirements, noting that § 12606(b), which prohibits nonfunctional slack fill, does not have a reference to deception and fraud. 101 Cal.App.3d at 366, 161 Cal.Rptr. 601. The court specifically stated that "[t]he question whether the 'deception and fraud' language [in § 12606(a)] modifies the whole first sentence (i.e. including the false bottom, side and lid provision) or just the language 'otherwise so constructed or filled' has not been raised in the instant case." *Id.* at 370 n. 4, 161 Cal.Rptr. 601. As the Court has not been adequately briefed on the issue of whether "deception and fraud" language modifies the whole first sentence, the Court declines to determine this question at this point, but finds that common questions may exist to the extent the UCL claim is predicated on § 12606(a).

### 3. Typicality

■■■■ In order for a court to find typicality, "a class representative must be part of the class" and "possess the same interest and suffer the same injury" as the members of the class. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal citations omitted). To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members." *Haley,* 169 F.R.D. at 649. The Ninth Circuit elaborated on this standard, stating that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020; *see also Armstrong v. Davis,* 275 F.3d 849, 869 (9th Cir.2001) ("[W]e do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.") (citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)).

■■■■ Plaintiff asserts that his claims are typical of the putative class because he purchased each of the Carmex jars at issue on several occasions. (Mot. at 13.) Defendants argue that Plaintiff's claims are not typical because 1) he lacks standing and 2) he seeks the remedy of "more product" instead of the damages, injunction, and restitution sought by the class. (Opp. at 19–20.)

As discussed above, Plaintiff has not demonstrated that he has standing to bring his CLRA and UCL claims, as there is no evidence before Court showing that he relied on the overall volume of the Carmex jars when purchasing the lip balm. (*See infra* Section III.A.) "[T]ypicality may not be established unless the named representative has individual standing to raise the legal claims of the class." *Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 235 (C.D.Cal.

2003). Thus, the Court finds that the typicality requirement is not satisfied.

### 4. Adequacy of Representation

▆▆▆ Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4). First, the class representatives must not have interests antagonistic to the unnamed class members. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978). Second, the representatives must be able to prosecute the action "vigorously through qualified counsel." *Id.* The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citations omitted).

▆▆▆ Defendants argue that Plaintiff's claims are not aligned with the putative class members' interests because he: 1) does not have standing; 2) believes himself to have been aggrieved by conduct different than the putative class; 3) lacks sufficient understanding of the class allegations and his obligations as class representative; and 4) seeks a refund that is less than the full refund available to all putative class members. (Opp. at 20–21.)

As with the typicality requirement, the adequacy requirement fails because Plaintiff has not demonstrated standing for the majority of the claims for which he seeks class certification. *See In re Stec Inc. Securities Litigation*, No. 09–1304, 2012 WL 6965372, at *6 (C.D.Cal. March 7, 2012) ("Proposed class representatives have a conflict of interest with the absent putative class members if they do not have standing to or refuse to assert certain claims that may be available and advantageous to the absent putative class members.").

Additionally, the fact that Plaintiff only asks for a 36% refund, less than is available to putative class members, makes him an inadequate class representative. *Cf. Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, 206 F.R.D. 271, 277 (C.D.Cal.2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class.").

Thus, the adequacy of representation requirement has not been met here.

### D. Federal Rule of Civil Procedure 23(b)(3)

A plaintiff seeking to certify a class under Rule 23(b)(3) must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

▆▆▆ Rule 23(b)'s requirement that common issues of law or fact predominate over individual issues is similar to, but more stringent than, Rule 23(a)'s commonality requirement. *In re Countrywide Financial Corp. Securities Litigation*, 273 F.R.D. 586, 596 (C.D.Cal.2009) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The focus in the predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 957 (9th Cir.2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001); *Hanlon*, 150 F.3d at 1022 (9th Cir.1998)).

As discussed above, the circumstances here show that a class-wide inference of reliance and causation is not appropriate for the majority of Plaintiff's CLRA and UCL claims. (*See infra* Section III.C.2.) Thus, individual issues of reliance predominate for those claims and the proposed class does not satisfy Rule 23(b)(3)'s predominance requirement.

### 2. Superiority

▆▆▆ The Court is unconvinced that a class action is superior in this case. First, Defendant already offers consumers a full refund of the amount paid for the product for any reason (*see* Woelbing Decl., Ex. F), which is greater than the 36% refund sought by Plaintiff. The superiority requirement is

not met where "[i]t makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D.Wash.2003); *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 504–505 (C.D.Cal.2011).

█ Second, in assessing superiority, Courts may consider "the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3)(D). It must be "administratively feasible to determine whether a particular person is a class member." *See Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 376 (N.D.Cal.2010). In *Hodes v. Van's Int'l Foods*, No. 09–1530, 2009 WL 2424214, at *4, the court found that the case was unmanageable under 23(b)(3) because of the number of class members and likelihood of identification. The court expressed concerns "about how Plaintiffs will identify each class member and prove which brand of Van's frozen waffles each member purchased, in what quantity, and for what purpose. The likelihood that tens of thousands of class members saved their receipts as proof of their purchase of Van's waffles is very low." *Id.; see also Moheb v. Nutramax Laboratories*, No. 12–3633, 2012 WL 6951904, at *8 (C.D.Cal. Sept. 4, 2012). Here, Defendant sold at least 4.5 million units during the statutory period. As in *Hodes*, it is highly unlikely that class members have kept their receipts for the product at issue. Plaintiff states that damages can be calculated using retailers' sales data. However, Plaintiff has not presented the Court with any method of verifying that self-identified class members suffered the alleged injury, or the amount of damages to which each class member is entitled.

Thus, Plaintiff has not met his burden of showing that Rule 23(b)(3)'s requirements are met here.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Class Certification.