Filed 9/11/20  Marentes v. Impac Funding Corp. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RENE MARENTES et al., | |
| Plaintiffs and Appellants, | G057616 |
| v. | (Super. Ct. No. 30-2012-00565615) |
| IMPAC FUNDING CORPORATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning and Peter J. Wilson, Judges.  Affirmed.

Kabateck and Brian S. Kabateck, Shant A. Karnikian; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Rutan & Tucker, Bradley A. Chapin, Allina M. Amuchie, and Lucas K. Hori for Defendant and Respondent.

Rene and Martha Marentes (the Marenteses) appeal from the trial court's judgment for Impac Funding Corporation (IFC) on the Marenteses' Unfair Competition Law (UCL) claim under Business and Professions Code section 17200.[1]  In the first phase of a three-phase trial, the trial court ruled the proper measure of restitution was the time value theory of money.  The sole issue on appeal is whether that decision was made in error.  We conclude it was not and affirm the judgment.

FACTS

A detailed recitation of the substantive facts can be found in our prior nonpublished opinion, *Marentes et al. v. Impac Funding Corporation* (May 23, 2014, G047973 [nonpub. opn.] (*Marentes I*).  Suffice it to say, on two occasions, the Marenteses paid IFC an "upfront fee" to modify their home loan *before* their mortgage loan modifications were completed.  The modifications resulted in lower payments for the Marenteses.

As relevant here, the Marenteses filed a first amended class action complaint against IFC alleging one cause of action for violating the UCL.  IFC filed a demurrer.  The trial court sustained IFC's demurrer without leave to amend.  In *Marentes I, supra,* G047973, we reversed the judgment.  We concluded IFC violated Civil Code section 2944.7, subdivision (a), by charging the upfront fees and the Marenteses had standing based on their factual allegation they lost money and/or credit for six months, i.e., the time value of money theory.

After remand, the trial court, Judge Kim Garlin Dunning, certified a class of all California residents who paid a loan modification fee to IFC from October 11, 2009, to the date the class was notified.  The parties stipulated to bifurcate trial on various issues.

---

[1]	All further statutory references are to the Business and Professions Code, unless otherwise indicated.

The first phase concerned whether the measure of restitution was a full refund of modification fees or the time value of the fees. The parties stipulated to facts and submitted briefs. After a bench trial, Judge Dunning ruled the proper measure of restitution was the time value of fees for the period between when the class members paid the fees and when IFC could lawfully collect those fees.

The second phase, presided over by Judge Peter J. Wilson pursuant to the parties' stipulation, concerned whether IFC violated Civil Code section 2944.7 by collecting fees before completing the loan modifications. After a bench trial, the trial court concluded IFC acted unlawfully and set a hearing date to determine the amount of damages.[2]

At a subsequent hearing, the Marenteses' counsel stated he did not have the information to satisfy his burden of proving the amount of damages. The trial court ordered additional briefing on damages and set a trial date, advising counsel to be ready to present evidence on the issue. On the scheduled trial date, the Marenteses' counsel conceded he could not establish the applicable time period—when the class members paid the fees vis-à-vis when IFC completed the loan modifications. The court ruled the Marenteses, and the class members, failed their burden of proof on the amount of restitution and ordered judgment in favor of IFC.

The trial court entered judgment for IFC, and IFC gave notice of entry of judgment. The Marenteses appealed.

DISCUSSION

The Marenteses argue the trial court erred by concluding the proper measure of restitution was the time value theory of money. We disagree.

Section 17200 defines unfair competition under the UCL in relevant part as

_____

[2] On appeal, IFC does not challenge the trial court's ruling, although it believes it acted lawfully.

3

"any unlawful, unfair or fraudulent business act or practice." Section 17203 authorizes the court to "make such orders or judgments . . . to *restore* to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (Italics added.)

Under the UCL individuals cannot seek damages but equitable relief and restitution. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150.) Additionally, restitution under the UCL is not a penalty. (*Id.* at p. 1148.) A UCL restitution order is one "'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property . . . .' [Citation.]" (*Id.* at pp. 1144-1145.) The recovery of restitution is not limited to money that was once in the plaintiff's possession but also includes money in which the plaintiff had a vested interest. (*Id.* at p. 1149.) Restitution is for money or property that was acquired by means of unfair competition. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 320.)

*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 784 (*Tobacco Cases II*), is instructive. In that case, the court addressed the issue of the proper measure of restitution in plaintiffs' class action against a cigarette manufacturer under, inter alia, the UCL. The court agreed with plaintiffs that under the UCL, restitution could be measured differently depending on the case. (*Id.* at p. 792.) The court continued though as follows: "It remains . . . that plaintiffs had the burden of proving entitlement to an alternative measure of restitution proper under all the circumstances. The amount of restitution ordered under the UCL 'must be supported by substantial evidence. Although a trial court has broad discretion under [the UCL] to grant equitable relief, that discretion is not "unlimited" [citation], and does not extend beyond the . . . parties' evidentiary showing.' [Citation.]" (*Ibid.*)

In rejecting plaintiffs' claim a full refund was the proper measure of restitution, the *Tobacco Cases II* court stated, "The UCL 'serves the dual purposes of

4

compensating *victims* and deterring perpetrators.' [Citation.] 'The California Supreme Court has made clear that the dual purposes of restoration and deterrence served by these statutes [sections 17203, 17535] are concurrent rather than independent . . . .' [Citations.]" (*Tobacco Cases II, supra,* 240 Cal.App.4th at p. 795.) After repeating restitution was limited to restoration of money or property acquired by means of unfair competition, the court explained, a restitution order requires the plaintiff to have lost money or property and the defendant to have acquired the money or property. (*Ibid.*) The court opined the following: "The intent of the section is to make whole, equitably, the victim of an unfair practice. While it may be that an order of restitution will also serve to deter future improper conduct, *in the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect.*" (*Ibid.*) The court added, "Generally, a party seeking restitution must return any benefit received. [Citation.]" (*Ibid.*)

The *Tobacco Cases II* court acknowledged that generally in a UCL case a full refund may be available when the plaintiff demonstrated the product had no value, but that remedy was unavailable because plaintiffs' did not dispute they received value from the cigarettes. (*Tobacco Cases II, supra,* 240 Cal.App.4th at pp. 795, 802.) The court concluded as follows: "We conclude that as a matter of law, restitution is not available here for the exclusive purpose of deterrence. Under plaintiffs' theory, a full refund would be available on any product, even costly items such as cars, yachts, and planes, based on UCL violations that had little or no impact on value. That, of course, is not the law. 'Section 17203 makes injunctive relief "the primary form of relief available under the UCL," while restitution is merely "ancillary."' [Citation.]" (*Id.* at pp. 801-802.)

The parties disagree on our standard of review. "'Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.] The amount of damages, on the other hand, is a fact question . . .

5

[and] an award of damages will not be disturbed if it is supported by substantial evidence." [Citation.]' [Citation.]" (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 610.) Thus, we review the proper measure of restitution independently.

Here, the trial court properly concluded the time value theory of money was the proper measure of restitution. The Marenteses concede IFC provided the loan modifications and thus they received a benefit. They do not dispute they were required to pay a loan modification fee. Although IFC maintains it acted lawfully when it collected the fees, it acknowledges the trial court concluded otherwise. Pursuant to Civil Code section 2944.7, IFC acted unlawfully when it collected the loan modification fees too early. Section 17203 authorizes a court to restore to a plaintiff money the defendant acquired through unfair competition. Here, IFC's unfair competition was unlawfully collecting the loan modification fees before it was statutorily allowed to do so.

Like in *Tobacco Cases II* where the plaintiffs received a benefit, here the Marenteses received a benefit, lower monthly mortgage payments. Thus, a full refund of the loan modification fees was not the proper measure of restitution. Pursuant to *Tobacco Cases II*, IFC had to return the benefit it received, which was not all the loan modification fees it collected. Instead, it had to return the benefit it received unlawfully, the interest on the fees it collected too early.

Contrary to the Marenteses claim, the *Tobacco Cases II* is not inapposite because it concerned fraudulent activity while here we are concerned with unlawful activity. As the Marenteses recognize, the *Tobacco Cases II* court citing to section 17203 stated, "Without any showing of loss to plaintiffs, there can be no restoration of money 'which may have been acquired *by means of such unfair competition*.' [Citation.]" (*Tobacco Cases II, supra,* 240 Cal.App.4th at p. 802, fn. omitted.) As stated above, "unfair competition" includes "any unlawful, unfair *or* fraudulent business act or practice." (§ 17200, italics added.) The *Tobacco Cases II* court's reasoning concerning

6

the proper measure of restitution is equally applicable whether it is an unlawful, unfair, or fraudulent business practice and is persuasive here.

The Marenteses rely on *Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1, to claim a full refund was the proper measure of restitution. *Medrazo* is inapposite because in that case the court addressed the issue of UCL standing and not the proper measure of restitution under the UCL. (*Id*. at pp. 12-14.) The *Medrazo* court did not conclude a full refund was the proper measure of restitution. Indeed, the court remanded the matter for further proceedings on the restitution issue. (*Id*. at pp. 14-15.) Additionally, *Medrazo* is distinguishable as plaintiff sought restitution of dealer added charges and not the full cost of the motorcycle. (*Id*. at p. 14) The Marenteses acknowledge this.

The Marenteses also rely on *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, to support their claim a full refund of fees was appropriate. But in that case the proper measure of restitution was rents defendant collected in excess of a rent control ordinance and not all rents. (*Id*. at p. 135.)

The Marenteses also assert the time value theory of money does not achieve the UCL's goal of deterring unfair competition. Under section 17203, restoration and deterrence are concurrent, and the section is not punitive in nature. (*Tobacco Cases II, supra,* 240 Cal.App.4th at p. 795 [section 17203 does not allow for monetary sanction merely as deterrent but must be measurable loss].)

Additionally, neither the Legislature's subsequent 2014 amendment to Civil Code section 2944.7 (Stats. 2014, ch. 457, § 1 [authorizing civil and criminal fines, and potential incarceration]), nor the Marenteses' reliance of California State Bar cases (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1113 [formal California State Bar opinions not binding but persuasive authority]), alter our conclusion.

7

Finally, in their reply brief for the first time, the Marenteses cite to a number of new cases, including federal and out-of-state cases; only one of which was decided after their opening brief was filed. Fairness militates against considering cases cited for the first time in appellants' reply brief. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477-1478.) Additionally, we are not bound by decisions of lower federal courts and our sister state courts. (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529 [not bound by sister courts of appeal]; *People v. Superior Court (Moore)* (1996) 50 Cal.App.4th 1202, 1211 [not bound by lower federal courts].) In any event, none of the newly cited cases persuade us the time value theory of money was an inappropriate measure of restitution.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.

8